

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00522-CV

Egna Bishop **VILLARREAL**,
Appellant

v.

Guillermo Gonzalez **GUERRA**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-09-139
Honorable Jose Luis Garza, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  July 2, 2014

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This is an appeal from a bench trial. The trial court found in favor of the appellee, Guillermo Gonzalez Guerra ("Guerra"), on his claim that he owned, by adverse possession, a 266-acre tract of land in Starr County, Texas. The appellant, Egna Bishop Villarreal ("Villarreal"), argues the judgment must be reversed because the evidence is legally and factually insufficient to support the trial court's findings that she or her predecessors in interest had notice of Guerra's adverse possession. Villarreal further argues the evidence is legally insufficient to support the trial court's award of attorney ad litem fees. We affirm the adverse possession portion of the judgment;

however, because there is no evidence to support the award of attorney ad litem fees, we reverse this portion of the judgment and remand this case to the trial court for a determination of the appropriate amount of attorney ad litem fees.

**BACKGROUND**

In April 2009, Villarreal filed suit seeking a declaration that she owned an undivided 8/11ths interest in a 266-acre tract of land in Starr County, Texas ("the property"), free and clear of any claim made by Guerra. Villarreal named Guerra and other individuals as defendants in her suit.[1] The trial court appointed attorneys ad litem to represent some of these individuals, specifically the unknown heirs and successors of Erasmo Gonzalez, Manuela G. Canales, and Francisca G. Canales. In response to Villarreal's suit, Guerra filed a counterclaim, seeking a declaration that he was the rightful owner of the property based on both the ten year and the twenty-five year adverse possession statutes.

At trial, Guerra testified that he first entered the property in the late 1960s. At the time, Villarreal's grandfather, Guillermo Gonzalez ("Gonzalez"), owned an undivided 8/11ths interest in the property. Gonzalez's siblings, Erasmo Gonzalez,[2] Manuela G. Canales, and Francisca G. Canales, each owned an undivided 1/11th interest in the property. Guerra offered to lease the property from Gonzalez, who was Guerra's grand uncle. However, Gonzalez refused to lease the property to Guerra. Instead, Gonzalez told Guerra he was giving him the property. Gonzalez also told Guerra to take care of the property and to not let anyone else on the property. Guerra followed Gonzalez's instructions and took over the property. Guerra started telling others that the property belonged to him. Guerra built a gate at the entrance of the property. Guerra placed a lock on the

---

[1]Although other parties were involved in the trial court proceedings, Guerra and Villarreal are the only parties in this appeal.

[2]Erasmo was Guerra's grandfather.

gate and did not provide anyone else with a key to the gate. The gate was bordered on each side by thick, thorny bushes that formed a natural barrier. Guerra also built fences around the perimeter of the property. Guerra grazed cattle on the property and was present on the property two to four times a week. Over the next four decades, Guerra continued to graze cattle on the land, and made numerous improvements to the property, including constructing five ponds, root-plowing and chop-rolling large swaths of the property, building a windmill and a shed on the property, and installing gas and electricity in an already-existing house.

Guerra further testified that his wife went to the tax office and attempted to pay the taxes on the property, but the tax office would not accept payments from her. Thus, Guerra gave money to Gonzalez to pay the taxes on the property. In support of this testimony, Guerra presented checks drawn on his checking account, indicating Guerra had paid Gonzalez $400.00 each year between 1981 and 1986. Guerra testified that everyone in his extended family knew that the property belonged to him. Guerra specifically testified that Villarreal's mother, Arabela, was present when Gonzalez gave the property to Guerra. According to Guerra, no one ever challenged Guerra's claim to the property while Gonzalez was alive. Gonzalez died in 1988. After Gonzalez died, two individuals entered onto the property and attempted to claim it as their own. Guerra had these individuals removed from the property.

Four witnesses testified that they were familiar with Guerra's long-time use of the property. Ruben D. Saenz recalled going to the property with Guerra in the 1960s when he and Guerra were still in high school. Saenz would go with Guerra every weekend to help repair fences or haul water for the cattle. In exchange, Guerra would let Saenz hunt for deer on the ranch. Saenz also saw Guerra fix the windmill on the property, clear brush, and root plow. Saenz was surprised to learn that anyone other than Guerra was claiming an ownership interest in the property. Saenz confirmed that there was a gate at the entrance of the property and the gate was always locked. Another friend

of Guerra's, Noel Garcia, testified that he had known Guerra for many years. Garcia started going to the ranch with Guerra in the mid-1970s, and went with him several times a year. On these visits, they would check the livestock, repair fences, and repair the windmill. Garcia was surprised that someone besides Guerra would claim an ownership interest in the property; he never imagined the property belonged to anyone else. Finally, Guerra's two adult sons testified that they grew up knowing the property belonged to their father.

Villarreal also testified at trial. According to Villarreal, the money Guerra paid to her grandfather, Gonzalez, was not for taxes but for rent. Villarreal took the position that Guerra had leased the land from her grandfather and, after her grandfather died, continued to lease the land from her mother and her aunts, who inherited her grandfather's interest in the property. In 1999, Villarreal's mother and her aunts conveyed their interest in the property to Villarreal by deed. According to Villarreal, her mother had paid the taxes on the property. In support of this contention, Villarreal presented checks drawn on her mother's checking account from 2001 to 2009. Villarreal admitted that neither she nor her mother ever had a key to the gate. However, according to Villarreal, her grandfather did have a key to the gate. Villarreal had visited the property a few times. She recalled visiting the property once with her grandfather shortly before he died, and once in the 1990s when she was invited onto the property by Guerra for a family gathering.

The trial court rendered judgment in favor of Guerra. The judgment declared that Guerra was the sole owner of the property under the ten year and twenty-five year statutes of limitation and dismissed all other pending claims. The trial court filed findings of fact and conclusions of law. In its findings, the trial court found that Gonzalez had actual notice that Guerra held the property by adverse possession, and that the alleged cotenants had actual and constructive notice

that Guerra held the property by adverse possession. Villarreal requested additional findings of fact and conclusions of law but this request was denied by the trial court. Villarreal appealed.

### ADVERSE POSSESSION REQUIREMENTS

The Civil Practice and Remedies Code defines adverse possession as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021 (West 2002). Title acquired by adverse possession is as full and absolute as any other perfected title. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.030(a) (West 2002) ("If an action for the recovery of real property is barred under this chapter, the person who holds the property in peaceable and adverse possession has full title, precluding all claims.").

Generally, to establish adverse possession, a claimant must prove: (1) actual possession of the disputed property; (2) under a claim of right; (3) that was adverse or hostile to the claim of another person and that it was consistently and continuously so for the duration of the statutory period. *Villarreal v. Chesapeake Zapata, L.P.*, No. 04-08-00171-CV, 2009 WL 1956387, at *3 (Tex. App.—San Antonio 2009, pet. denied) (mem. op.); *Cherokee Water Co. v. Freeman*, 145 S.W.3d 809, 817 (Tex. App.—Texarkana 2004, pet. denied). "The possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011) (emphasis in original). The test for hostility is whether acts performed by the claimant on the land, and the use made of the land, were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property. *Villarreal*, 2009 WL 1956387, at *3; *Masonic Bldg. Ass'n of Houston, Inc., v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The adverse possession standard that courts apply to cotenants differs from the standard that courts impose between strangers. *See Marshall*, 342 S.W.3d at 70. "In an adverse possession claim between cotenants, the proponent must prove ouster—unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants." *Id*. "Cotenants must surmount a more stringent requirement because acts of ownership which, if done by a stranger would per se be a disseizin, are not necessarily such when cotenants share an undivided interest." *Id*. (internal quotations omitted). Similarly, in an adverse possession claim involving a landlord and a tenant, the proponent must show that the landlord-owner had notice of the hostile nature of the tenant's possession. *Bernal v. Chavez*, 198 S.W.3d 15, 19 (Tex. App.—El Paso 2006, no pet.); *see Todd v. Bruner*, 365 S.W.2d 155, 161 (Tex. 1963) (recognizing that the adverse possession standard is the same for cotenants as it is for landlords and tenants). Ultimately, however, "the test for establishing adverse possession, both between strangers and cotenants, is whether the acts unmistakably assert a claim of 'exclusive ownership' by the occupant." *BP Am. Prod.*, 342 S.W.3d at 71.

As a preliminary matter, we note that Villarreal contends that Guerra was required to satisfy a stringent ouster standard because he was a cotenant. However, the record establishes that Guerra was not a cotenant when he first entered the property, and he did not become a cotenant until 1983 or 1984, when his father died and he inherited an interest in the land.[3] Nevertheless, Villarreal asserted at oral argument that Guerra was required to satisfy a stringent ouster standard because when Guerra first entered the property, Guerra and Gonzalez had a landlord-tenant relationship. Based on the evidence before it, we cannot say that the trial court was required to find that Guerra and Gonzalez had a landlord-tenant relationship. As will be discussed in greater detail below, there was some evidence that Guerra exclusively possessed the property after Gonzalez told Guerra that

---

[3]The trial court's findings of fact or conclusions of law do not address Guerra's status when he entered the property, and Villarreal did not address this issue in her request for additional findings of fact and conclusions of law.

he was giving him the property. The law provides that possession of land following a verbal gift is generally regarded as hostile from its inception and indicates an intent to take the land as an owner. *Bernal*, 198 S.W.3d at 19; *Dickson v. Dickson*, 993 S.W.2d 735, 738 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Heard v. Bowen*, 184 S.W. 234, 235-36 (Tex. Civ. App.—San Antonio 1916, writ ref'd). Possession of land following a verbal gift is adverse and not permissive because such a gift violates the statute of frauds and is unenforceable. *Bernal*, 198 S.W.3d at 19.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

Villarreal challenges the legal and factual sufficiency of the evidence to support the trial court's findings that (1) Gonzalez had actual notice that Guerra held the property by adverse possession, and (2) the alleged cotenants had actual and constructive notice that Guerra held the property by adverse possession.

### *Standards of Review*

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Monroe v. Monroe*, 358 S.W.3d 711, 716 (Tex. App.—San Antonio 2011, pet. denied). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony. *Dwairy v. Lopez*, 243 S.W.3d 710, 713-14 (Tex. App.—San Antonio 2007, no pet.). We may not pass upon the credibility of the witnesses, or substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id*. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge must fail. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the judgment only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### *Actual Notice by Gonzalez*

We begin with Villarreal's arguments that the evidence is legally and factually insufficient to support the trial court's finding that Gonzalez had actual notice that Guerra was claiming sole ownership of the property by adverse possession. In this section of her brief, Villarreal argues that parts of Guerra's trial testimony conclusively establish that Guerra never gave Gonzalez notice that he was claiming the property by adverse possession. In support of this argument, Villarreal claims "[t]he evidence conclusively establishes the opposite of ouster and notice of repudiation" because Guerra "admitted that he refused to oust or give notice of repudiation to Gonzalez for any reason." Villarreal directs our attention to parts of Guerra's trial testimony that she characterizes as admissions that must be given conclusive effect.

A true judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties, and is conclusive on the party making it. *Mendoza v. Fidelity and Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A party's testimonial declarations that are contrary to his position are not judicial admissions but quasi-admissions. *Id*.; *Laredo Medical*

*Group Corp. v. Mireles*, 155 S.W.3d 417, 429 (Tex. App.—San Antonio 2004, pet. denied). Quasi-admissions are usually not conclusive on the party making them; they are merely some evidence and the trier of fact decides the weight to be given them. *Mendoza*, 606 S.W.3d at 694. However, quasi-admissions will be treated as judicial admissions when the following five elements are satisfied: (1) the statement was made during the course of a judicial proceeding, (2) the statement was contrary to an essential fact embraced in a theory of recovery or a defense asserted by the person giving the testimony, (3) the statement was deliberate, clear, and unequivocal, (4) giving conclusive effect to the statement would be consistent with public policy, and (5) the statement would not be destructive of the opposing party's theory of recovery. *Id.*; *Mireles*, 155 S.W.3d at 429.

On cross-examination by Villarreal's counsel, Guerra testified as follows:

Counsel:    I asked you in your deposition: Did you ever tell anyone that you were claiming adversely? And you testified, no. Do you recall saying that?

Guerra:    Yeah.

Counsel:    And I asked you in your deposition: Was the first time that you ever claimed adverse possession on this property was [sic] after this lawsuit was filed and you testified, yes. Do you remember saying that?

Guerra:    Yes.

Counsel:    And I asked you in your deposition: How could anyone know if you have a stranger [sic], how could anyone know that you were claiming adversely against [Gonzalez] and his heirs? And you said, they wouldn't know. Is that your testimony?

Guerra:    Yes, sir.

Guerra's statements do not qualify as judicial admissions. First, Guerra's statements were not deliberate, clear, and unequivocal. Guerra's statements were made in response to questions about whether Guerra remembered or recalled isolated statements made during his deposition.

None of the questions provided any context for Guerra's deposition testimony. And, some of the questions were poorly-phrased and confusing. Second, at least two of the statements were not contrary to an essential fact embraced in Guerra's theory of recovery. To establish his adverse possession claim, Guerra was not required to tell others that he was making a claim, nor was he required to bring his claim at an earlier time. Because Guerra's statements were not judicial admissions, they do not have conclusive effect. The trial court, as the trier of fact, was therefore free to decide the weight to be given to Guerra's statements.

Villarreal also directs our attention to Guerra's trial testimony that he always tried to maintain a friendly, cordial relationship with Gonzalez, and would never have fought with Gonzalez about the property. Villarreal suggests that the lack of hostility between Guerra and Gonzalez somehow rendered the evidence legally insufficient. We disagree. In the context of adverse possession, the term "hostile" refers to whether a claim is inconsistent with the rights of the true owner, not whether the parties are hostile to one another personally. *Tran v. Macha*, 176 S.W.3d 128, 132-33 (Tex. App.—Houston [1st Dist.], 2004), *rev'd on other grounds*, 213 S.W.3d 913 (Tex. 2006). In other words, there is no requirement that personal animosity exist between the parties. *Id.*

Viewed in the light most favorable to the judgment, the evidence shows that Guerra approached Gonzalez in the late 1960s and asked him if he could lease the property to graze cattle. Gonzalez refused Guerra's request to lease the property and gave him the property instead. Gonzalez instructed Guerra to take the property and to let no one else on it. Thereafter, Guerra placed his cattle on the property and took over the property. Guerra told others, including family members, that the property belonged to him. In the early 1970s, Guerra erected a gate at the property's entrance and placed a lock on the gate. He did not provide Gonzalez, or anyone else for that matter, with a key to the gate. Guerra expressly stated that the purpose of placing the locked

gate on the property was to keep others off the property. As the reviewing appellate court, our role is not to substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *See Ellis*, 971 S.W.2d at 407. Based on the evidence presented, a reasonable factfinder could have concluded that Gonzalez had actual notice that Guerra was claiming the property by adverse possession. We conclude the evidence was legally sufficient to support such a finding.

In support of her factual sufficiency challenge, Villarreal incorporates by reference the arguments she made in her legal sufficiency challenge. Villarreal emphasizes Guerra's previously-discussed statement indicating that no one would have known that Guerra was claiming adversely to Gonzalez. However, there was ample evidence that Gonzalez knew that Guerra was claiming the property adversely to Gonzalez. According to Guerra's testimony, Gonzalez gave him the property and instructed him to prevent others from entering the property. Guerra subsequently placed a locked gate on the property and failed to provide Gonzalez, or anyone else for that matter, with a key to the lock. Any inconsistencies in Guerra's testimony must be resolved by the trial court. *See Dwairy*, 243 S.W.3d at 713-14. After considering all of the evidence, we are unable to conclude that the trial court's finding that Gonzalez had actual notice of Guerra's adverse possession was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Having determined that the evidence was legally and factually sufficient to support the finding that Gonzalez had actual notice that Guerra was claiming sole ownership of the property by adverse possession, we need not address whether the evidence was legally and factually sufficient to support the trial court's finding that the alleged cotenants had actual and constructive notice that Guerra held the property by adverse possession. *See* TEX. R. APP. P. 47.1 (requiring

opinions to be as brief as practicable while addressing every issue raised and necessary to the final disposition of the appeal).

### *Duration*

Next, Villarreal argues the trial court's judgment must be reversed because there was legally and factually insufficient evidence to support the trial court's findings that Guerra adversely possessed the property for the length of time required under the ten year or the twenty-five year adverse possession statutes. The ten year adverse possession statute provides that a person must bring suit no later than ten years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property. TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a) (West 2002). The twenty-five year adverse possession statute provides that a person must bring suit not later that twenty-five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property. TEX. CIV. PRAC. & REM. CODE ANN. § 16.027 (West 2002).

Here, the evidence showed that Guerra adversely possessed the property beginning in the late 1960s and continued to do so until Villarreal filed suit in 2009. Additionally, the evidence showed that Gonzalez, who owned an 8/11ths interest in the property when Guerra entered the property, never filed suit to recover his interest in the property. Gonzalez died in 1988. We conclude the evidence was legally and factually sufficient to support the trial court's finding that Guerra adversely possessed the property for the length of time required under the ten year adverse possession statute.

**ADDITIONAL FINDINGS OF FACT**

After the trial court filed its findings of fact and conclusions of law, Villarreal filed a request for additional findings of fact and conclusions of law. Guerra opposed Villarreal's request,

arguing that the additional findings and conclusions proposed by Villarreal were unnecessary, and the trial court's original findings and conclusions adequately addressed all of the elements necessary to support the judgment. The trial court refused to file the additional findings and conclusions proposed by Villarreal. On appeal, Villarreal argues that we must presume that the trial court's refusal to file additional findings and conclusions was harmful. We disagree.

After the trial court files findings of fact and conclusions of law, a party may request additional findings of fact or conclusions of law. TEX. R. CIV. P. 298. The trial court shall file any additional or amended findings and conclusions that are appropriate within ten days after the request is filed. *Id*. The trial court is only required to make additional findings on ultimate issues; additional findings that relate to an evidentiary point are improper. *Doncaster v. Hernaiz*, 161 S.W.3d 594, 608 (Tex. App.—San Antonio 2005, no pet.).

"If the record shows the complaining party did not suffer injury, the trial court's failure to make such additional findings does not require reversal." *City of San Antonio v. El Dorado Amusement Co., Inc.*, 195 S.W.3d 238, 243 (Tex. App.—San Antonio 2006, pet. denied). To obtain a reversal, the appellant must show from the record that the trial court's refusal to file additional findings of fact and conclusions of law as requested was reasonably calculated to cause and did cause the rendition of an improper judgment. *Id*. at 243-44; *Doncaster*, 161 S.W.3d at 608. If the trial court's refusal to make additional findings does not prevent an adequate presentation on appeal, there is no reversible error. *El Dorado Amusement*, 195 S.W.3d at 244; *Doncaster*, 161 S.W.3d at 608. An appellant is prevented from making an adequate presentation on appeal if she is forced to guess the reasons for the trial court's decision. *El Dorado Amusement*, 195 S.W.3d at 244; *Doncaster*, 161 S.W.3d at 608. An appellant usually does not have to guess the reasons for the trial court's decision when there is only one ground of recovery or a single defense. *Larry F. Smith, Inc. v. The Weber Co. Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied).

In this case, the record shows Villarreal has suffered no injury. Because adverse possession was the only ground of recovery presented, the reasons for the trial court's decision were apparent. Moreover, Villarreal was not prevented from adequately presenting her arguments on appeal. Villarreal has failed to show from the record that the trial court's refusal to file additional findings of fact and conclusions of law was reasonably calculated to cause and did cause the rendition of an improper judgment.

### ATTORNEY AD LITEM FEES

In its judgment, the trial court awarded attorney ad litem John A. Pope III $12,533.89 as reasonable and necessary fees and attorney ad litem Rene P. Montalvo $6,475.00 as reasonable and necessary fees. Villarreal was ordered to pay these attorney ad litem fees as costs. *See* TEX. R. CIV. P. 244 (requiring the trial court to tax attorney ad litem fees as costs). On appeal, Villarreal argues the attorney ad litem fees awarded in the judgment must be reversed because the record contains no evidence supporting the amount of attorney ad litem fees awarded. The record before us includes the last two pages of Mr. Pope's motion for attorney ad litem fees. It does not include any part of Mr. Montalvo's motion, nor does it not include any affidavits or billing records. Thus, there is nothing in the record to support the amount of attorney ad litem fees awarded. We conclude that the portion of the judgment awarding attorney ad litem fees must be reversed.

The trial court was required to appoint attorneys ad litem to represent the defendants in this case who were served with citation by publication and failed to file an answer or appear before the court. *See* TEX. R. CIV. P. 244. The trial court was also required to allow the attorneys ad litem to be paid a reasonable fee for their services. *See id*.; *Rhodes v. Cahill*, 802 S.W.2d 643, 647 (Tex. 1990). "An attorney ad litem cannot as a practical matter recover his fees from his unknown clients." *Rhodes*, 802 S.W.2d at 647. "Our rules of civil and appellate practice should therefore be read to provide a reasonable fee and source of payment for the necessary efforts of an attorney ad

litem." *Id*. Therefore, we conclude that this case must be remanded to the trial court for further proceedings to determine the appropriate amount of attorney ad litem fees. *See* TEX. R. APP. P. 43.3(b) (allowing appellate court to reverse and remand cases for further proceedings).

**CONCLUSION**

We reverse the portion of the judgment awarding attorney ad litem fees and remand this case to the trial court for further proceedings to determine the appropriate amount of attorney ad litem fees. We affirm the remainder of the judgment.

Karen Angelini, Justice