

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00730-CV

William K. **LESTER**,
Appellant

v.

Harold **CONWAY**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 13820
Honorable N. Keith Williams, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason Pulliam, Justice

Delivered and Filed:  December 14, 2016

AFFIRMED

William K. Lester appeals the trial court's judgment granting an easement of necessity to Harold Conway for the purpose of running electric service to Conway's property.  Lester contends the trial court erred in applying the law governing necessity easements as opposed to the law governing prior use easements.  Lester also contends the evidence is legally and factually insufficient to support the trial court's findings that the easement is necessary now and was necessary when Conway purchased his property.  We affirm the trial court's judgment.

**BACKGROUND**

In 2009, Lester conveyed a 46.21-acre tract of land to Conway out of Lester's 1,088-acre ranch. At the time of the conveyance, electrical power lines and poles were in place on Lester's property on easements held by Central Texas Electric Cooperative which owned and maintained the lines and poles. When Lester conveyed the property to Conway, Conway's property did not have access to electricity, and the property was being used for camping, hunting, and hiking.

In 2014, Conway sued Lester seeking a declaration that he was entitled to an easement for the purpose of running electrical service to his property. After a bench trial, the trial court found electrical service to Conway's property was necessary at the time the property was severed from Lester's larger tract of land and continues to be necessary. Therefore, the trial court concluded Conway was entitled to an implied easement by necessity to a specific electrical pole on Lester's property to provide electrical service to Conway's property. Lester appeals.

**NECESSITY EASEMENT V. PRIOR USE EASEMENT**

In his first issue, Lester asserts the trial court erred in applying the law governing necessity easements as opposed to the law governing prior use easements. Although Lester cites *Hamrick v. Ward*, 446 S.W.3d 377 (Tex. 2014) to support this assertion, he admits "the Court in Hamrick does not hold that a party claiming a utility easement cannot pursue a necessity easement." Lester contends, however, "there is reason to believe that this is the case under Texas Law." Conway responds, "While the vast majority of necessity easement cases involve roadway access, there has never been any Texas authority that holds a party may not pursue an implied necessity easement for a purpose other than roadway access."

In Hamrick, the Texas Supreme Court recognized the distinction between necessity easements and prior use easements as follows:

> For over 125 years, we have distinguished between implied easements by way of necessity (which we refer to here as "necessity easements") and implied easements by prior use (which we refer to here as "prior use easements"). We created and have utilized the necessity easement for cases involving roadway access to previously unified, landlocked parcels. Roadways by nature are typically substantial encumbrances on property, and we accordingly require strict, continuing necessity to maintain necessity easements. By contrast, we created and have primarily utilized the prior use easement doctrine for lesser improvements to the landlocked parcel, such as utility lines that traverse the adjoining tract. We have required, to some degree, a lesser burden of proof for prior use easements (reasonable necessity at severance rather than strict and continued necessity) because they generally impose a lesser encumbrance on the adjoining tract (e.g., a power line compared to a roadway).

446 S.W.3d at 379. In Hamrick, a party was claiming an implied prior use easement for a road. *Id.* The court held "the necessity easement is the legal doctrine applicable to claims of landowners asserting implied easements for roadway access to their landlocked, previously unified parcel." *Id.*

The court's holding that the law governing necessity easements is applicable when a party claims roadway access does not, however, mean the law governing prior use easements is always applicable when a party claims a lesser improvement. In fact, the court recognized that the prior use easement doctrine is only "primarily" used for such lesser improvements. *Id.* Furthermore, the court also recognized necessity easements "are implied out of the desire to avoid the proliferation of landlocked—and therefore, unproductive—parcels of land." *Id.* at 383. In this case, Conway testified he needs the electrical access to make his property productive. Finally, we do not believe the Texas Supreme Court would hold that landowners, who are asserting an implied easement for electrical access to their landlocked, previously unified parcels of property, are required to rely on the "lesser burden of proof" applicable to prior use easements. *Id.* at 379. Accordingly, we conclude the trial court did not err in applying the law governing necessity easements. Lester's first issue is overruled.

**NECESSITY EASEMENT**

"To successfully assert a necessity easement, the party claiming the easement must demonstrate: (1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access is a necessity and not a mere convenience; and (3) the necessity existed at the time the two estates were severed." *Id.* at 382. "As this analysis makes clear, a party seeking a necessity easement must prove both a historical necessity (that the way was necessary at the time of severance) and a continuing, present necessity for the way in question." *Id.*

In his second and third issues, Lester contends the evidence is legally and factually insufficient to establish a present necessity or a historical necessity.

**A.      Standards of Review**

*1.      Findings of Fact*

In an appeal from a bench trial, the trial court's findings of fact have the same force and dignity as a jury verdict. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Villarreal v. Guerra*, 446 S.W.3d 404, 411 (Tex. App.—San Antonio 2014, pet. denied). We review a trial court's factual findings under the same legal and factual sufficiency of the evidence standards used in determining whether sufficient evidence exists to support a jury's finding. *Anderson*, 806 S.W.2d at 794; *Villarreal*, 446 S.W.3d at 411.

As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). "The trial court may believe or disbelieve the testimony of a witness, in whole or in part, and it may resolve any inconsistencies in a witness's testimony." *Villarreal*, 446 S.W.3d at 411. We may not substitute our judgment for that of the trial court, even if the evidence would clearly support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Villarreal*, 446 S.W.3d at 411.

*2.      Legal Sufficiency*

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. In making this determination, we credit evidence favoring the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *Id.* If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

*3.      Factual Sufficiency*

In reviewing a factual sufficiency issue, we consider all the evidence supporting and contradicting the finding. *Maritime Overseas Corp.*, 971 S.W.2d at 406–07. When a party attacks the factual sufficiency of the evidence pertaining to an adverse finding on which the party did not have the burden of proof, the party must "demonstrate there is insufficient evidence to support the adverse finding." *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690–91 (Tex. App.—San Antonio 2012, no pet.) (citing *Croucher*, 660 S.W.2d at 58). We will not reverse the judgment unless "'the evidence which supports the jury's finding is so weak as to [make the finding] clearly wrong and manifestly unjust.'" *Id.* (quoting *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied)); *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

**B.      Current Necessity**

*1.      Use of Property*

Lester contends electrical access is not necessary for the continued productive use of Conway's property for hunting, hiking, and camping. Lester argues Conway used the property for those purposes after the conveyance and only now wants to build a cabin on the property. In addition, Lester points to a provision in the contract between the parties stating "**NOTICE**: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs" and

further notes Conway agreed to purchase the property "in its present condition" or as-is.[1]  Lester argues if Conway believed the property needed electrical access, Conway was required to negotiate and pay for an express easement providing electrical access to the property just as he negotiated and paid for express easements providing him physical access to the property.

At trial, Conway testified his "intent *was* to build a cabin," and "we *were* looking at peach orchards, we *were* looking at grape orchards or grape arbors, that kind of thing, in addition to running cattle." (emphasis added).  Deferring to the trial court's assessment of the credibility of the witnesses, we conclude the trial court could have found that at the time Conway purchased the property, Conway intended to build a cabin and conduct agricultural operations on the property. *See City of Keller*, 168 S.W.3d at 827; *Villarreal*, 446 S.W.3d at 411.

In addition, Conway testified he had discussions with Lester regarding tapping into the power line on Lester's property.  From Conway's testimony, the trial court could have found both Lester and Conway believed Conway's property needed electrical access, and Conway determined his discussions with Lester would ensure suitable utilities were available to his property.  The trial court also could have found Conway only became aware suitable utilities were not available when Lester later refused to provide the electrical access—despite their prior discussions—due to animosity that arose after the conveyance.

Although Lester testified to the contrary, the trial court could disbelieve it.  *See City of Keller*, 168 S.W.3d at 827; *Villarreal*, 446 S.W.3d at 411.  Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's finding that electrical service to Conway's property is necessary and a continuing, present necessity for an implied easement exists.

---

[1] Lester argues this provision in the contract gave rise to a presumption that Conway "did not see any need for utilities to satisfy his intended use of the Property."  The only law Lester cites to support this presumption is *Hamrick*, 446 S.W.3d at 383.  The quoted portion of the opinion, however, relates to the court's discussion of prior use easements not necessity easements and, therefore, is inapplicable. *See id*.

### 2. Other Sources of Electrical Access

Lester next contends the evidence is insufficient to establish the necessity of an easement because Conway could obtain electrical access through a generator, solar panels, or wind power. The evidence, however, established the operation of a generator cost $30.00 per day, and Conway testified building a cabin and drilling and operating a well would not be feasible using a generator. Although Lester's attorney argued Conway could access electricity through solar panels or wind power, no testimony was presented addressing the feasibility of electrical access through these alternative sources. Conway, however, generally testified the feasibility of developing the property in the intended matter would not be possible without electrical power access.

Deferring to the trial court's assessment of the credibility of the witnesses, we conclude the trial court could have found electrical access through utility poles and wires was necessary based on Conway's general testimony regarding the feasibility of developing his property in the absence of such access. *See City of Keller*, 168 S.W.3d at 827; *Villarreal*, 446 S.W.3d at 411. Therefore, the evidence is legally and factually sufficient to support the trial court's finding that "placing utility poles and electric lines" was the only means for Conway's property to have access to electricity.

### 3. Location of Easement

Finally, Lester contends the evidence is insufficient to establish the necessity for the easement because Conway could have obtained an easement by necessity either from a different adjoining landowner or to a different utility pole in Conway's existing right-of-way easement over Lester's property.

With regard to the property owned by the adjoining landowner, Lester testified he sold the property to its current owner three years before trial. Because the adjoining landowner never owned Conway's property, the evidence does not establish Conway could have obtained a

necessity easement in a lawsuit against the adjoining landowner. *See Hamrick*, 446 S.W.3d at 382 (noting party claiming necessity easement must establish unity of ownership of the alleged dominant and servient estates). Therefore, the evidence is legally and factually sufficient to support the trial court's finding that Conway's property "cannot have access to electricity except by placing utility poles and lines over Lester's Property." *See id.*

Lester cites no authority to support his contention that once the trial court determined Conway was entitled to an easement by necessity from Lester, the trial court was bound to choose one possible necessity easement over another possible necessity easement.[2] The cases cited by Lester pertain to alternative access other than through an easement by necessity and are readily distinguishable. *See Duff v. Matthews*, 311 S.W.2d 637, 639–40, 642–43 (Tex. 1958) (alternative access through dedicated road reserved on subdivision plat); *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied) (alternative access through an existing public road); *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 429 (Tex. App.—Austin 1998, no pet.) (alternative access through existing express easement).

"The right to select the location of the easement belongs initially to the owner of the servient estate at the time the dominant estate is created, which right is to be exercised in a reasonable manner, having due regard for the rights and interests of the dominant estate owner." *Samuelson v. Alvarado*, 847 S.W.2d 319, 323 (Tex. App.—El Paso 1993, no writ). "If the servient owner fails to do so, then the owner of the dominant estate may locate the easement of necessity with due regard for the convenience of the parties." *Id.*

---

[2] Lester argues the trial court should have granted the easement to a utility pole located in Conway's existing right-of-way easement. Conway's right-of-way easement did not, however, grant Conway any access to the utility pole for purposes of obtaining electrical access. *See Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (noting easement "authorizes its holder to use the property for only particular purposes"). Therefore, an easement granted to that utility pole would still be a necessity easement.

In this case, the trial court heard evidence that Lester preferred the easement run to a utility pole located on Lester's property approximately three hundred yards from the southern boundary of Conway's property but within an existing easement Lester granted to Conway for right-of-way access. The evidence also established another utility pole was located on Lester's property within fifty yards of the northern boundary of Conway's property. Because this pole was located adjacent to the green for the sixth hole of a golf course, Lester testified running an electrical wire to that pole would interfere with the golf course. However, the trial court was also provided pictures of the green showing its unmaintained status, and although Lester testified his property was listed for sale, he admitted the golf course had not been used since 2013.[3] Although the trial court was initially inclined to run the easement to the pole located three hundred yards from the southern boundary of Conway's property, the following exchange then occurred:

> THE COURT: Now I know that Mr. Conway wants that which is the closest proximity across the golf course on hole six or across the river.
>
> For the reasons stated by Mr. Lester, I believe there's some legitimate complaints about that. And I believe the—the—the fairest route to go to grant your easement is from—if this is—is this north?
>
> MR. CONWAY: Yes, sir.
>
> THE COURT: That it would be from the—The utility pole closest to the southern border here is that one, I guess, you mentioned. Now this is the one I think ya'll offered before, right?
>
> MR. DAVIS: [Lester's attorney]: Yes, Your Honor.
>
> THE COURT: And if that's just 300-yards there, I mean it is—it is still going to be a lot less expensive than going under water or underground and so I'm granting you a utility easement by necessity from your southern border, beginning at the—from the pole on Mr. Lester's property that is closest to what I'm describing in this area as a southern border. Okay?
>
> MR. DAVIS: Okay.
>
> THE COURT: And that way, that seems like that—that seems to me that's a good way to accomplish your—to address your concerns about the water and the golf course.

---

[3] The bench trial was held in June of 2015.

> MR. LESTER: Do I receive compensation for this?
>
> THE COURT: You know what, Mr. Lester, I tell you what, I may just go back to the water or to the golf course.
>
> You know what, would you rather go across the water or would you rather go from hole six?
>
> MR. CONWAY: I'd rather go from hole six.
>
> THE COURT: Okay. All right. Well, we will—we will—I'm trying to think here. I was trying to accommodate your concerns, Mr. Lester, and so the—you totally—you—
>
> MR. DAVIS: Your Honor, please.
>
> THE COURT: No, no, Stewart. You've argued extremely well for Mr. Lester today, but I'm afraid that's probably been the attitude all along and I think these—all three are good options. And the—the creek is closest and the golf course thing is closest. And—and—

Following this exchange, the trial court announced the easement would run from the pole adjacent to the sixth hole of the golf course.

As previously noted, Lester's right to select the location of the easement was required to be exercised in a reasonable manner, having due regard for Conway's rights and interests. *See id.* Based on the exchange, the trial court could have found Lester was not exercising his right to select the location in a reasonable manner. *See City of Keller*, 168 S.W.3d at 819 (noting factfinder is the sole judge of the credibility of the witnesses). Therefore, the trial court could have found Conway had the right to locate the easement and that the location Conway chose was "with due regard for the convenience of the parties." *Samuelson*, 847 S.W.2d at 323. We conclude the evidence is legally and factually sufficient to support the trial court's location of the implied easement.

## C.      Historical Necessity

In his third issue, Lester contends the evidence is legally and factually insufficient to establish historical necessity. In this issue, Lester repeats his argument regarding electrical access only becoming necessary because Conway intends to make a different use of his property than the

use intended at the time he purchased the property. Based on Conway's testimony, however, the trial court could have found Conway always intended to build a cabin, develop orchards, and run cattle, and the evidence is legally and factually sufficient to support that finding. *See City of Keller*, 168 S.W.3d at 827; *Villarreal*, 446 S.W.3d at 411.

## CONCLUSION

The trial court did not err in applying the law governing necessity easements, and the evidence is legally and factually sufficient to support the trial court's findings of historical and present necessity. Accordingly, the trial court's judgment is affirmed.

Patricia O. Alvarez, Justice