### GRIGGS et al. v. JEFFERSON BANK & TRUST CO. et al (MOSELEY, Intervener).

### No. 4285.

Court of Civil Appeals of Texas. Texarkana.

Feb. 21, 1933.

Rehearing Denied Feb. 23, 1933.

Wm. Neff, of Tulsa, Okl., and Jas. T. Casey, of Longview, for appellants.

W. H. Sanford, of Longview, Geo. Prendergast, of Marshall, and J. A. R. Moseley, Jr., of Texarkana, for appellees.

SELLERS, Justice.

This suit was brought by Camps Normal Industrial Institute, a Texas corporation, and several individuals as plaintiffs against the Jefferson Bank & Trust Company and several individuals as defendants to recover title and possession of fifty acres of land, a part of the J. Ruddle Survey in Gregg county. The plaintiffs alleged the statutory action in trespass to try title only. The defendants and intervener J. A. R. Moseley each answered by a general denial, plea of not guilty, and specifically alleged the interest each owned in the land, and asked to have their title quieted.

Camps Normal Industrial Institute received its charter from the state of Texas on February 12, 1918. The purpose for which the corporation was formed was the support of an industrial educational undertaking for the scientific normal and industrial training of the colored youth of Texas. It has no capital stock, and is governed by a board of directors to be composed of not less than eight nor more than twenty-five members. The charter names twelve directors to serve during the first year, and provides for the selection of new directors annually. Seven of the original directors are plaintiffs in this suit.

On April 15, 1918, Camps Normal Industrial Institute purchased fifty acres of land involved in this suit from H. H. Hopkins and wife, H. A. Hopkins, the deed of conveyance being as follows:

"Know all men by these presents, that we, H. H. Hopkins and wife, H. A. Hopkins, of the county of Gregg, state of Texas, for and in consideration of the sum of two thousand, two hundred and fifty dollars to us secured to be paid by Camps Normal Industrial Institute, by and through its duly elected president and secretary, as follows:

"One thousand four hundred and eighteen dollars, cash in hand paid, the receipt of which is hereby acknowledged, and three certain notes of even date herewith the first two for the sum of three hundred dollars each, and the third for two hundred and thirty-two dollars, executed by J. E. Boyd as

president, and A. Harris, as assistant secretary of said Camps Normal Industrial Institute, said notes bearing 10% interest per annum from date until paid, and due and payable to H. H. Hopkins on or before one, two and three years from date, respectively, and providing for the usual ten per cent attorney's fees in certain contingencies; have granted, sold and conveyed, and by these presents do grant, sell and convey, unto J. E. Boyd, R. B. White, O. T. Womack, S. G. Jones, H. H. Hopkins, Wiley Thomas, Taylor Anderson, J. M. Christian, L. R. Jones, A. P. Cooksey, W. E. King and E. M. Griggs, the directors of said Camps Normal Industrial Institute, a corporation, duly incorporated under the laws of the state of Texas, and their duly elected successors in office for the use and benefit of said Camps Normal Industrial Institute, all of Gregg county, Texas, all that certain lot, tract or parcel of land situated in Gregg county, Texas, a part of the John Ruddle H. R. survey, and described as follows: [Here follows description.]

"To have and to hold the above described property, together with all and singular the rights and appurtenances thereunto belonging, unto the said above named directors of said Camps Normal Institute, for the use and benefit of said institute, their successors in office, and their assigns, forever. And we do hereby bind ourselves, our heirs, executors, and administrators to warrant and forever defend, all and singular the said premises, unto the said directors, for the use and benefit of said Camps Normal Industrial Institute, and their successors in office and their assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"But it is expressly agreed and stipulated that the vendor's lien is retained against the above described property, premises and improvements, until the above described notes and all interest thereon, are fully paid, according to their face and tenor, effect and reading, when this deed shall become absolute.

"Witness our hands at Longview, Texas, this 5th day of April, A. D. 1918."

The vendor's lien notes were paid off by and released to Camps Normal Industrial Institute.

On September 9, 1919, pursuant to authority from the directors of Camps Normal Industrial Institute, there was created a mechanic's lien against the property involved to secure the payment of $2,700. This lien and indebtedness was renewed and extended on July 16, 1923, by the giving of a deed of trust on the property. This debt and the deed of trust securing the same were duly transferred to the Jefferson State Bank & Trust Company. The defendant Jefferson State Bank & Trust Company brought suit against Camps Normal Industrial Institute for its debt and foreclosure of the deed of trust lien, and on October 11, 1930, recovered judgment by default against the corporation for its debt and for foreclosure of its lien. An order of sale was issued on this judgment, and the property was sold by the sheriff to P. G. Henderson for a consideration of $1,000. Henderson in turn conveyed the land to the Jefferson State Bank & Trust Company under whom all the defendants in this suit claim.

The case was tried to a jury, and at the close of the evidence the court instructed a verdict for the defendants and entered judgment thereon in favor of defendants for the title to the land involved, from which judgment the plaintiff have duly prosecuted this appeal.

Appellants' first proposition asserts that the court erred in directing a verdict for appellees, for the reason that the title to the land was in the trustees named in the deed, and that they were not parties to the judgment under which the appellees claimed, and have never conveyed their title, and therefore the title to the land is still in these appellants. The only evidence of the trust agreement by which the legal title to the land involved was conveyed to appellants other than Camps Normal Industrial Institute as trustee is that to be found in the deed itself. It is clear to us from the deed that the consideration for the land was paid by Camps Normal Industrial Institute, and that the title was taken in the name of the other appellants as trustees for the use and benefit of the appellant Camps Normal Industrial Institute. No other duty is required of the trustees except to hold the title for the use and benefit of the corporation. Such a trust agreement creates only a dry, passive, and naked trust in which the corporation is the real owner of the land with power to dispose of it whenever it may deem it advisable to do so. The title held by the corporation was divested out of it by the foreclosure proceedings and was held by appellees at the time this suit was brought. The effect of the judgment in this suit was to merge the naked legal title held by the trustees with the equitable or real beneficial title owned by the appellees, and thereby quieting the complete fee-simple title to the land in appellees so far as the parties to this suit are concerned.

But appellants insist the court erred in allowing the appellees to introduce over their objection the judgment of foreclosure for two reasons: First, because they failed to show service of citation or a proper waiver thereof by the appellant Camps Normal Industrial Institute, the defendant in that suit; and, second, because the recitals in the judgment do not show that the court ever acquired ju-

risdiction over the person of the defendant. Neither of these contentions is entitled to be sustained. As heretofore shown, appellants' suit is an action in trespass to try title only, and therefore no direct attack is made upon the judgment introduced, but the attack is a collateral one. The contentions here made were before the Dallas Court of Civil Appeals in the recent case of Simms Oil Co. v. Butcher, 55 S.W.(2d) 192, 194, in which Judge Jones, in overruling them, said: "However, not every judgment that is in fact void can be impeached by means of a collateral attack. The general rule is that, the infirmity of the judgment, in the respect that renders it void, must appear on the face of the record, and cannot be shown by evidence aliunde, except in a proceeding that constitutes a direct attack on the validity of the judgment. It is the settled rule of law in this state that, on any matter upon which the court must have passed in the rendition of the judgment against a party to the proceedings, such judgment, on a collateral attack, is immune from evidence aliunde the record. Crawford v. McDonald [88 Tex. 626, 33 S. W. 325], supra, and cases therein cited. The jurisdiction over the person of a defendant litigant in a court of general jurisdiction rests either upon the due service of process on such litigant, or some act of his which amounts to voluntary submission to the jurisdiction of the court. Before judgment can be entered against such litigant, the court is bound to inquire into the regularity and sufficiency of the service, and the fact that a judgment is rendered in the suit constitutes a conclusive presumption that the court did investigate the service and pronounced it valid, even though there is no recital of such fact in the judgment. The question of service vel non thus becomes an issue adjudicated by the court. In such a case, the record is held by our courts to import absolute verity, and cannot be contradicted by evidence in a collateral attack, to show that the defendant was not in fact served. Stapleton v. Wilcox et al., 2 Tex. Civ. App. 542, 21 S. W. 972."

█ Neither do we concur in the proposition of appellants that the court erred in refusing their request for permission to file a trial amendment to make a direct attack upon the judgment. The request came after both parties had introduced their evidence in chief and while the appellants were introducing their evidence in rebuttal. Such an amendment would have set up an entirely new cause of action; therefore we are of the opinion that the court did not abuse its discretion in denying permission to file the trial amendment. Bender v. Bender (Tex. Civ. App.) 187 S. W. 735.

Finding no error in the record, the judgment of the trial court is affirmed.