Ronald RIFE, Mary Kathryn Hampton, Individually and as Administratix of the Estate of Randall Rife, Deceased, Appellants

v.

Joseph KERR, James Drought, Robert Lee Bobbitt, Jr., Nancy Northway Gill, Lynn Northway Swanson, Nancy Northway Gill and Lynn Northway Swanson as Independent Co–Executors of the Estate of William Northway, Jr., Elaine Cashion, Jack Armstrong Kerr, and Janet K. Buske, Appellees

No. 04–16–00018–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: December 21, 2016

Review Denied June 2, 2017

·Rolando M. Jasso, Knickerbocker, Heredia, Jasso & Stewart, P.C., Eagle Pass, TX, Mason Herring, Herring Law Firm, Houston, TX, Vincent L. Marable, III, Paul Webb, P.C., Wharton, TX, for Appellants.

Catherine M. Stone, Langley & Banack, Inc., San Antonio, TX, Catrina Purcell Longoria, Langley & Banack, Inc., Carrizo Springs, TX, for Appellees.

Sitting: Patricia O. Alvarez, Justice Luz Elena D. Chapa, Justice Jason Pulliam, Justice

## OPINION

Opinion by: Luz Elena D. Chapa, Justice

The Rifes[1] and the Kerrs[2] dispute who has superior title to an undivided ½ interest in a mineral estate under 476.7 acres in Dimmit County. It is undisputed the Kerrs own the other undivided ½ interest in the mineral estate. The trial court granted the Kerrs' no-evidence motion for summary judgment and denied the Rifes' competing motion for summary judgment.

The Rifes have appealed. They argue they produced some evidence of superior title through a common source and the evidence conclusively establishes they are entitled to a rendition of judgment in their favor. The Kerrs respond they produced evidence raising a fact issue as to whether they adversely possessed any interest the

Rifes and their predecessors in title might have owned. Although we agree the Rifes produced some evidence that they have superior title to an undivided ½ interest in the mineral estate, we conclude the Kerrs produced some evidence that they adversely possessed that interest from the Rifes and their predecessors in title. We therefore reverse the trial court's judgment and remand this case for further proceedings.

### BACKGROUND

In this suit, the Rifes seek to prove they own an undivided ½ interest in the disputed mineral estate, which interest the Rifes describe as follows:

An undivided one-half (½) interest in and to all of the oil, gas, and related hydrocarbons and right to explore, develop and produce same in and under approximately 476.7 acres, more or less, of real property located in Dimmit County, Texas, hereinafter referred to as the "Property" and described as follows: 476.7 acres, more or less, located in the Michael Devereux Survey No. 491, A–47, and the Heirs of Mary Wagster Survey No. 492–1/2, A–791, Dimmit County, Texas, being all of Lot Nos. 1 through 15, inclusive, and 18 through 21, inclusive, Block 1; and all of. Lot Nos. 33 through 36, inclusive, the South Half of Lot Nos. 37 through 40, inclusive, all of Lot Nos. 41 and 42, the South Half of Lot Nos. 43 through 46, and all of Lot Nos. 47 through 64, inclusive, Block 2 of the Good Luck Colony Subdivision, Dimmit County, Texas, as depicted on the Plat thereof recorded in Volume 13,

---

1. Appellants Ronald Rife and Mary Kathryn Hampton, Individually and as Administratrix of the Estate of Randall Rife, Deceased, filed one brief in which they refer to themselves as "the Rifes."

2. Appellees Joseph Kerr, James Drought, Robert Lee Bobbitt, Jr., Nancy Northway Gill, Lynn Northway Swanson, as Independent Co–Executors of the Estate of William Northway, Jr., Elaine Cashion, Jack Armstrong Kerr, and Janet K. Buske filed one brief in they which refer to themselves as "the Kerrs."

Page 600 of the Deed Records of Dimmit County, Texas, and more particularly described in Deed dated September 4, 1985, recorded in Volume 209, Page 565 of the Deed Records of Dimmit County, Texas, from the Estate of Charles A. Kerr, National Bank of San Antonio, Executor, and Helen F. Kerr, sole beneficiary of the Estate of Charles A. Kerr, as Grantors, to The Helen F. Kerr Trust, National Bank of San Antonio, Trustee, as Grantee, LESS AND [EXCEPT] Lots 2, 3 and 4, Block 1 and Lots 47 and 48 of Block 2 of the Good Luck Colony Subdivision.

The lots listed in this property description were originally platted as part of the Good Luck Colony Subdivision (or Good Luck Colony) in Dimmit County in 1909. This case concerns numerous conveyances occurring before the surface estate and mineral estate were severed. For clarity and brevity, we refer to the lots listed in Rifes' description of their mineral interest as "the disputed lots."

## A. The Origin of Good Luck Colony & the Disputed Mineral Estate

In 1909, L.A. Kerr, T.R. Keck, and G.W. Henrichson founded Good Luck Colony. Good Luck Colony consisted of 10,037 acres of land owned by the three of them. The three founders subdivided the land into approximately 1,000 ten-acre lots. In 1909, the founders entered into an agreement with A.H. Rife, F.B. Earnest, and W.S. Findley for Rife, Earnest, and Findley to act as the founders' agents in selling the lots. Under the 1909 agreement, the founders conveyed all of the lots to L.A. Kerr, Trustee, for the express purpose of expediting and simplifying the sale of the lots. The 1909 agreement provided L.A. Kerr, Trustee, would execute and deliver a warranty deed upon a purchaser's payment. The 1909 agreement also provided the manner in which the founders and their selling agents would share costs and divide sales proceeds. It is undisputed the property conveyed to L.A. Kerr, Trustee, by the 1909 deed included the disputed lots. Thus, as of 1909, title to all of the Good Luck Colony lots, including the disputed lots, was held by L.A. Kerr, Trustee, for the purpose of facilitating real estate sales under the 1909 agreement.

After a series of agreements from 1910 to 1916, the unsold lots that "remain[ed] in the hands of L.A. Kerr, Trustee" were "set aside as the property of L.A. Kerr, Trustee, for the joint use and benefit of L.A. Kerr and A.H. Rife." In 1910, the founders entered into a co-partnership agreement with A.H. Rife and J.E. Rogers[3] to establish the Texas Land & Loan Company. The co-partnership agreement incorporated the rights and privileges of the 1909 agreement between the founders and the selling agents. According to the Kerrs, the co-partnership was relatively unsuccessful at selling the lots due to an economic recession.

In 1913, J.E. Rogers hired an attorney to file suit against L.A. Kerr, Trustee, T.R. Keck, A.H. Rife, and G.W. Henrichson to dissolve the co-partnership and to partition and divide the unsold lands. The suit was settled in 1914, and under the settlement agreement, the remaining partners became the owners of J.E. Rogers's interests under the prior agreements.

A.H. Rife, L.A. Kerr, and Henrichson entered into another agreement in 1916. Under the 1916 agreement, all unsold lots that "remained in the hands of L.A. Kerr, Trustee," were "set aside as the property

---

3. According to the Rifes, J.E. Rogers had acquired all of W.S. Findley's interest under the 1909 agreement. F.B. Earnest was not a party to this agreement.

of L.A. Kerr, Trustee, for the joint use and benefit of L.A. Kerr and A.H. Rife." [4]

## B. The Parties' Competing Claims to the Mineral Estate

The Kerrs maintain their title to the entire mineral estate is derived from a 1932 deed from L.A. Kerr to his wife, Alta Kerr. The 1932 deed to Alta Kerr conveyed:

> [a]ll of Lots Numbers One (1) to Fifteen (15), inclusive, and all of Lots Numbers Eighteen (18) to Twenty One (21) inclusive, in Block Number One (1) of Good Luck Colony [and]
> [a]ll of Lots Numbers Thirty Three (33) to Thirty Six (36), inclusive, all Lots Numbers Forty One (41) to Sixty Four (64), inclusive; and the South Half of Lots Thirty Seven (37) to Forty (40), inclusive, all in Block Number Two (2) in Good Luck Colony . . . .

The lots conveyed by the 1932 deed to Alta Kerr included all of the lots listed in the Rifes' description of the mineral estate to which they now claim an undivided ½ interest. The 1932 deed was recorded. The Kerrs assert they "receive[d] their present mineral interest in [these lots] as a result of [a] transfer from, or the deaths of, Alta's immediate successors."

The Rifes argue their alleged interest in the mineral estate is derived from the 1916 agreement, as well as from a 1937 deed by which L.A. Kerr, Trustee, conveyed to A.H. Rife "a full undivided one-half (½) interest in and to all those certain tracts and parcels of land out of the Good Luck Colony lands as per the plat of same recorded in . . . Dimmit County, Texas." The deed referred to the Dimmit County deed records "for more particular description of said . . . land . . . in my name as trustee or to be recovered in my name as trustee." The Rifes argue they inherited an undivided ½ interest in the mineral estate from A.H. Rife and his successors in title.

In 2010, the Kerrs executed oil and gas leases with Chesapeake Exploration, LLC, regarding the entire mineral estate in dispute. According to the Kerrs, Chesapeake notified the Rifes they possibly had an interest in the leased mineral estate. In 2012, the Rifes executed oil and gas leases with Chesapeake regarding the mineral estate. The Rifes then filed suit to establish they held superior title to an undivided ½ interest in the disputed mineral estate.

## C. Procedural History

The Rifes sued the Kerrs and alleged a trespass to try title claim. The Kerrs filed an answer generally denying the Rifes' allegations, asserted a plea of not guilty, raised adverse possession as an affirmative defense, and alleged counterclaims against the Rifes.

The Rifes filed a traditional and no-evidence motion for partial summary judgment. Their motion presented a traditional ground seeking summary judgment on their trespass to try title claim. The Rifes also presented no-evidence grounds on the Kerrs' affirmative defense of adverse possession and the Kerrs' counterclaims. The Kerrs filed a no-evidence motion for partial summary judgment on the Rifes' trespass to try title claim. The motion's sole ground was that there is no evidence raising a fact issue as to whether the Rifes held superior title to an undivided ½ interest in the mineral estate.

---

4. The same day the 1916 agreement was executed, G.W. Henrichson quitclaimed his interests to L.A. Kerr and A.H. Rife. T.R. Keck was not a party to the 1916 agreement. In 1925, T.R. Keck executed a quitclaim deed regarding the Good Luck Colony lots to L.A. Kerr, Trustee.

The trial court denied the Rifes' traditional and no-evidence motion for summary judgment, granted the Kerrs' no-evidence motion for summary judgment, and severed all counterclaims asserted by the Kerrs into a different case. The severance order stated the purpose of the order was to render a final judgment. The Rifes appeal.

## STANDARD OF REVIEW

■ "We review a summary judgment de novo." *City of San Antonio v. San Antonio Express–News*, 47 S.W.3d 556, 561 (Tex. App.–San Antonio 2000, pet. denied). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "When a party moves for a no-evidence summary judgment, the nonmovant must produce some evidence raising a genuine issue of material fact." *Romo v. Tex. Dep't of Transp.*, 48 S.W.3d 265, 269 (Tex. App.–San Antonio 2001, no pet.) (citing TEX. R. CIV. P. 166a(i)). The nonmovant does not have the burden to marshal its evidence, but it must produce some evidence that raises a fact issue on the challenged element. *See id.* We take as true all evidence favorable to the nonmovant, resolve all conflicts in the evidence in the non-movants' favor, and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *City of San Antonio*, 47 S.W.3d at 561. When parties file competing motions for summary judgment, and the trial court grants one and denies the other, we review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

## TRESPASS TO TRY TITLE

The trial court granted the Kerrs' no-evidence motion for summary judgment on the Rifes' trespass to try title claim. The trial court severed all counterclaims against the Kerrs. Thus, the sole claim before us on appeal is the Rifes' trespass to try title claim.

■ Trespass to try title "is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a) (West 2014). "[E]vidence of legal right to located and surveyed land is sufficient title to maintain a trespass to try title action." *Id.* § 22.002. "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

■ In the trial court, the Rifes alleged they have superior title only through a common source. "To prove a *prima facie* case of common source, the plaintiff must connect his title and the defendant's title through complete chains of title to the common source and then show that his title is superior to the one that the defendant derived from the common source." *Wolfe v. Devon Energy Prod. Co.*, 382 S.W.3d 434, 459 (Tex. App.–Waco 2012, pet. denied) (citing *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994)). "Until the plaintiff presents such prima facie proof of title, the defendant is not required to offer evidence of title and the plaintiff may not rely on his failure to do so." *Gillum v. Temple*, 546 S.W.2d 361, 363–64 (Tex. Civ. App.–Corpus Christi 1976, writ ref'd n.r.e.). Thus, "[t]he plain-

tiff's claim must rest on the strength of its title, not a weakness in its opponent's title." *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.–San Antonio 2009, pet. denied) (citing *Rogers*, 884 S.W.2d at 768).

Challenging the Rifes' claim to superior title through a common source, the Kerrs argued in the trial court the Rifes had no evidence of (1) a common source of title and (2) superior title derived from the common source. The Rifes contend they produced some evidence that raises a genuine issue of material fact as to both challenged elements.

## A. Common Source of Title

■ To prove a common source, a plaintiff may rely on a defendant's abstract of title and proof of conveyances through deeds to connect the plaintiff's title to the defendant's title. TEX. R. CIV. P. 798 (providing certified copies of deeds may show a plaintiff's chain of title); *Best Inv. Co. v. Hernandez*, 479 S.W.2d 759, 762 (Tex. Civ. App.–Dallas 1972, writ ref'd n.r.e.). In response to the Kerrs' no-evidence motion for summary judgment, the Rifes produced their abstract of title, certified copies of deed records, and the Kerrs' abstract of title.

Both the Rifes' and the Kerrs' abstracts of title begin with the same two recorded instruments: the 1909 plat of Good Luck Colony and the 1909 deed conveying all Good Luck Colony lots to L.A. Kerr, Trustee. The certified copies of the deeds show the Rifes' chain of title connects to L.A. Kerr, Trustee. The Rifes produced evidence showing they are the grandchildren of A.H. Rife and inherited A.H. Rife's interest in the Good Luck Colony lots through their father and grandmother.[5]

The Kerrs alleged in their trial court pleadings, represented to the trial court during the summary judgment hearing, and argue on appeal that they have superior title under the 1932 deed from L.A. Kerr to Alta Kerr. Under the 1932 deed, Alta Kerr received an interest in certain lots L.A. Kerr held as trustee.

Although the Kerrs note the 1909 agreement (in addition to the 1909 plat and 1909 deed) is not part of the common source, the Kerrs do not explain why this demonstrates L.A. Kerr, Trustee, under the 1909 plat and 1909 deed is not a common source of title. Furthermore, because L.A. Kerr held title to the lots described by the 1932 deed in his trustee capacity only, it is also immaterial that L.A. Kerr failed to specify his "trustee" capacity in that deed. *See W. 17th Res., LLC v. Pawelek*, 482 S.W.3d 690, 692–95 (Tex. App.–San Antonio 2015, pet. denied). We hold the Rifes produced some evidence connecting their chain of title and the Kerrs' chain of title to L.A. Kerr, Trustee, under the 1909 plat and the 1909 deed.

## B. Superior Title

Although the Rifes produced some evidence of a common source of title, they must also prove their "title is superior to the one that the defendant derived from the common source." *See Wolfe*, 382 S.W.3d at 459 (citing *Rogers*, 884 S.W.2d at 768). The Kerrs contend there are two reasons why the Rifes produced no evidence of superior title. First, the Kerrs argue the 1932 deed to Alta Kerr conveyed the disputed lots before L.A. Kerr, Trustee, made a conveyance to A.H. Rife in 1937. Second, they argue the Rifes produced no evidence that, when A.H. Rife

---

5. Specifically, the Rifes produced instruments showing A.H. Rife devised his property to his wife Josephine and his son Archie; Josephine died, and her estate passed to her heirs at law; and Archie died, and his estate passed to his heirs at law; and the Rifes are Josephine's and Archie's heirs at law.

allegedly received an interest in the unsold lots remaining in the name of L.A. Kerr, Trustee, the unsold lots included the disputed lots.

### 1. The 1932 Deed to Alta Kerr

The Rifes argue A.H. Rife received an undivided ½ interest in the unsold lots held by L.A. Kerr, Trustee, under the 1916 agreement, which set aside the lots "remain[ing] in the hands of L.A. Kerr, Trustee ... as the property of L.A. Kerr, Trustee, for the joint use and benefit of L.A. Kerr and A.H. Rife." They contend A.H. Rife and L.A. Kerr became cotenants in the unsold lots as a result of this agreement. The Rifes also argue A.H. Rife held title to an undivided ½ interest under a 1937 deed by which L.A. Kerr conveyed "a full undivided one-half (1/2) interest in and to all those certain tracts and parcels of land out of the Good Luck Colony lands ... in my name as trustee or to be recovered in my name as trustee." The Kerrs contend L.A. Kerr conveyed the disputed lots to Alta Kerr in 1932, five years before L.A. Kerr executed the 1937 deed.

■ "Generally, the older title emanating from a common source is better title and superior to others." *United Sav. Ass'n of Tex. v. Villanueva*, 878 S.W.2d 619, 622 (Tex. App.–Corpus Christi 1994, no writ) (citing *Wells v. Kan. Univ. Endowment Assoc.*, 825 S.W.2d 483, 486 (Tex. App.–Houston [1st Dist.] 1992, writ denied)). The Rifes posit A.H. Rife and L.A. Kerr became cotenants under the 1916 agreement and L.A. Kerr therefore lacked the authority to convey A.H. Rife's interest. The Kerrs posit L.A. Kerr was the trustee of an express trust with the authority to convey the Good Luck Colony lots under the 1909 deed. The Kerrs also argue the 1916 agreement is not competent evidence under the deed merger doctrine and, under the merger of title doctrine, A.H. Rife

never acquired an interest in the disputed mineral estate because L.A. Kerr held all legal and equitable title to the Good Luck Colony lots in 1925. If A.H. Rife acquired an undivided ½ interest under the 1916 agreement and L.A. Kerr was a cotenant who lacked the authority to convey A.H. Rife's interest to Alta Kerr in 1932, then the Rifes have superior title. *See id.*

#### a. Express Trust or Cotenancy

■ "To constitute [an express] trust, there must be a conveyance or transfer to a person capable of holding it; there must also be an object or fund transferred, and a cestui que trust or purpose to which the trust fund is to be applied." *City of Austin v. Cahill*, 99 Tex. 172, 189, 88 S.W. 542, 548 (1905); *see Gabert v. Olcott*, 86 Tex. 121, 127–28, 23 S.W. 985, 987–88 (1893). Thus, "the mere designation of a party as 'trustee' does not create a trust." *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 249 (Tex. 1984). Here, the 1909 deed did more than merely designate L.A. Kerr as trustee. The 1909 deed conveyed identifiable real property to L.A. Kerr, Trustee, for the specific purposes of expediting and simplifying the sale of the Good Luck Colony lots. Also, the 1909 deed gave L.A. Kerr, Trustee, the authority to convey the property. The deed also referred to "this trust" several times. Therefore, the 1909 deed appears to have created an express trust.

■ But title to trust property vests immediately in the beneficiaries if an express trust becomes dry or passive. *See id.* (citing *Moore v. City of Waco*, 85 Tex. 206, 210, 20 S.W. 61, 62 (1892)); *Lanius v. Fletcher*, 100 Tex. 550, 555, 101 S.W. 1076, 1078 (1907); *Bohn v. Bohn*, 420 S.W.2d 165, 172 (Tex. Civ. App.–Houston [1st Dist.] 1967, writ dism'd). A dry or passive trust may arise in at least two situations. *See Nolana Dev. Ass'n*, 682 S.W.2d at 249;

*Lanius*, 101 S.W. at 1078. First, an express trust may become a dry or passive trust when "the purposes of the trust hav[e] been accomplished." *Lanius*, 100 Tex. at 555, 101 S.W. at 1078. Second, a dry or passive trust arises when a trustee is given no affirmative powers and duties. *Nolana Dev. Ass'n*, 682 S.W.2d at 249; *Moore*, 20 S.W. at 62; *Bohn*, 420 S.W.2d at 172. If the only requirement of a trustee is to hold the property "for the use and benefit" of another, then the trust is a dry or passive trust. *See Zahn v. Nat'l Bank of Commerce of Dallas*, 328 S.W.2d 783, 791 (Tex. Civ. App.–Dallas 1959, writ ref'd n.r.e.); *Griggs v. Jefferson Bank & Trust Co.*, 57 S.W.2d 390, 391 (Tex. Civ. App.–Texarkana 1933, writ dism'd).

A trustee of a dry or passive trust has no power to convey the trust property without the direction and consent of the beneficiary. *See Humphries v. Wiley*, 76 S.W.2d 793, 797–98 (Tex. Civ. App.–Texarkana 1934, writ dism'd); *Paschal v. Evans*, 30 S.W. 923, 924 (Tex. Civ. App. 1895, no writ). The trustee of a passive trust "generally is responsible only for conveying the property to the beneficiary or in accordance with his directions." *Nolana Dev. Ass'n*, 682 S.W.2d at 250.

The 1909 deed contained an express declaration that the purpose of placing title to the Good Luck Colony lots in the name of L.A. Kerr, Trustee, and authorizing him to convey the lots was to expedite and simplify the sale of the lots under the 1909 agreement between the three founders and the three selling agents. The 1910 co-partnership agreement incorporated the rights and privileges of the 1909 agreement between the founders and the selling agents and established the Texas Land & Loan Company to continue the sale of the lots. There is evidence litigation ensued among the Texas Land & Loan Company partners to dissolve the partnership, and the litigation was settled in 1914. After the settlement agreement, and under the subsequent 1916 agreement, the properties "remain[ing] in the hands of L.A. Kerr, Trustee" were "set aside as the property of L.A. Kerr, Trustee, for the joint use and benefit of L.A. Kerr and A.H. Rife." Collectively, the agreements between 1910 and 1916 are some evidence raising a fact issue as to whether the purpose of naming L.A. Kerr as trustee in the 1909 deed—to sell the lots as a business venture—as carried out by the 1910 agreement, had been accomplished or ceased to exist and, thus, a dry or passive trust arose. *See Lanius*, 101 S.W. at 1078.

Furthermore, the plain language of the "set aside" provision of the 1916 agreement reflects the parties' intent to limit the purpose for which L.A. Kerr held the unsold lots as trustee, and that sole purpose was to hold the property for the joint use and benefit of L.A. Kerr and A.H. Rife. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) (explaining courts construe contracts to give effect to the parties' intent based on the plain, ordinary, and generally accepted meaning of the words); *cf.* BLACK'S LAW DICTIONARY 1404 (8th ed. 2004) (defining "set-aside" as something reserved or put a side for a specific purpose). Thus, the 1916 agreement is some evidence raising fact issues as to whether (1) any express trust created by the 1909 deed became dry or passive as a result of the 1916 agreement, and (2) L.A. Kerr and A.H. Rife jointly owned the unsold lots as a result of the 1916 agreement. *See Nolana Dev. Ass'n*, 682 S.W.2d at 249; *Moore*, 20 S.W. at 62; *Bohn*, 420 S.W.2d at 172; *Zahn*, 328 S.W.2d at 791; *Griggs*, 57 S.W.2d at 391.

Generally, when more than one individual jointly owns a property, the relationship between the owners is a "joint

tenancy" or "cotenancy." *See Corn v. First Tex. Joint Stock Land Bank of Hous.*, 131 S.W.2d 752, 757 (Tex. Civ. App.–Fort Worth 1939, writ ref'd). "A deed by one cotenant, without the consent or participation of other cotenants, may only convey such interest as the maker of the deed possesses." *Wilderness Cove, Ltd. v. Cold Spring Granite Co.*, 62 S.W.3d 844, 850 (Tex. App.–Austin 2001, no pet.) (citing *Thomas v. Sw. Settlement & Dev. Co.*, 132 Tex. 413, 123 S.W.2d 290, 297 (1939)). If L.A. Kerr and A.H. Rife jointly owned the unsold lots as a result of the 1916 agreement, they were cotenants and L.A. Kerr lacked the authority to convey A.H. Rife's interest. *See id.*

 The understanding that L.A. Kerr and A.H. Rife were joint owners or cotenants after the 1916 agreement is further supported by recitals contained in a 1935 quitclaim deed from A.H. Rife to L.A. Kerr. The 1935 deed describes several conveyances and agreements starting in 1909 and recites, "[A]s a result of all of the instruments hereinabove mentioned the said L.A. Kerr and A.H. Rife became individual owners of … all unsold lots remaining in the name of L.A. Kerr, Trustee." This recital is competent evidence that L.A. Kerr and A.H. Rife jointly owned the unsold lots remaining in the name of L.A. Kerr as of 1916. *See SW Loan A, L.P. v. Duarte–Viera*, 487 S.W.3d 697, 706 (Tex. App.–San Antonio 2016, no pet.) ("Recitals in a deed are presumed correct, unless rebutted by competent evidence."); *Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex. App.–Beaumont 2004, no pet.) ("The recital in the quitclaim deed is evidence that the contract for deed has been cancelled by the parties."). We therefore conclude the Rifes produced some evidence raising fact issues as to whether L.A. Kerr and A.H. Rife were cotenants in 1916 and L.A. Kerr

lacked the authority to convey A.H. Rife's interest to Alta Kerr in 1932.

### b. The Deed Merger Doctrine

 The Kerrs argue the 1916 agreement is not competent summary judgment evidence under the deed merger doctrine. "The Supreme Court of Texas has long recognized that the conveyance provisions in a contract for the sale of real property merge into the deed executed in accordance with the contract." *Devon Energy Prod.Co., L.P. v. KCS Resources, LLC*, 450 S.W.3d 203, 211 (Tex.App.–Hous. [14 Dist.] 2014) (citing *Alvarado v. Bolton*, 749 S.W.2d 47, 48 (Tex. 1988)). "The merger doctrine requires courts to look to the deed alone in evaluating the parties' respective rights even if the terms of the deed vary from the contract [of sale]." *Id.* The merger doctrine is a rule by which "the conveyance provisions in a contract of sale of real property merge into the deed executed in accordance with the contract." *Id.* The doctrine applies to an executory contract when a deed is executed and accepted as performance of the contract to convey real estate. *Baker v. Baker*, 207 S.W.2d 244, 249–50 (Tex. Civ. App.–San Antonio 1947, writ ref'd n.r.e.).

The Kerrs suggest the 1916 agreement is an executory contract of sale that merged with a 1916 deed by which G.W. Henrichson quitclaimed his interest in the Good Luck Colony lots to L.A. Kerr, Trustee. We disagree. The 1916 agreement, by its terms, set aside property for the joint use and benefit of L.A. Kerr and A.H. Rife. It is a conveyance, and not an executory contract of sale contemplating a future conveyance in accordance with the agreement, which is required for a contract to merge with a deed under the deed merger doctrine. *See id.* We therefore conclude the deed merger doctrine is inapplicable, the 1916 agreement did not merge

with the 1916 quitclaim deed, and the 1916 agreement is competent evidence upon which the Rifes may rely. *See Devon Energy Prod.*, 450 S.W.3d at 211; *Baker*, 207 S.W.2d at 249–50.

### c. Merger of Title

The Kerrs further argue all legal and equitable title in the unsold lots merged, and L.A. Kerr owned all unsold lots in fee simple, when T.R. Keck quitclaimed his interest in the lots to L.A. Kerr, Trustee, in 1925. When one person holds both legal title to the property and the entire beneficial interest, the two estates merge and that person holds the property free of trust. *Moody v. Pitts*, 708 S.W.2d 930, 934 (Tex. App.–Corpus Christi 1986, no writ). When full legal title and the entire beneficial interest merge, "[t]here is no separation of the legal and beneficial interests, and there are no duties to assume or to provide." *Id.*

The Kerrs note T.R. Keck was an original owner of the Good Luck Colony lots and was not a party to the 1916 agreement. According to the Kerrs, L.A. Kerr, Trustee, held legal title as of 1909, and L.A. Kerr, T.R. Keck, and G.W. Henrichson held equitable title. G.W. Henrichson quitclaimed his interest to L.A. Kerr, Trustee, in 1916, and T.R. Keck quitclaimed his interest to L.A. Kerr, Trustee, in 1925. The Kerrs' reasoning fails to account for the "set aside" provision of the 1916 agreement, which raises a fact issue on whether A.H. Rife acquired legal title as a cotenant. Because the 1916 agreement raises a fact issue on whether A.H. Rife acquired legal title in 1916, a fact issue remains about whether legal and beneficial title merged in 1925. *See id.*

### d. Conclusion Regarding the 1932 Deed to Alta Kerr

We conclude the Rifes produced some evidence raising fact issues as to whether:

(1) any express trust created by the 1909 deed became dry or passive as a result of the 1916 agreement; (2) L.A. Kerr and A.H. Rife became cotenants in the disputed lots in 1916; and (3) in 1932, L.A. Kerr conveyed only his undivided ½ interest to Alta Kerr. We therefore conclude a fact issue remains about whether the 1932 deed to Alta Kerr breaks the Rifes' chain of title.

### 2. Evidence of the Lots that Were Unsold in 1916

The 1916 agreement described the lots set aside for the joint use and benefit of L.A. Kerr and A.H. Rife as "any lands, property, notes or other things of value that remain in the hands of L.A. Kerr, Trustee." The 1937 deed from L.A. Kerr, Trustee, to A.H. Rife conveyed:

> a full undivided one-half (1/2) interest in and to all those certain tracts and parcels of land out of the Good Luck Colony lands as per plat of same recorded in volume 13, pages 600–601, Dimmit County, Texas, and reference is here made to the deed records of the said Dimmit County, Texas, for more particular description of said tracts or parcels of land, now standing of record in the deed records of Dimmit County, Texas, in my name as trustee or to be recovered in my name as trustee.

Citing *Mills v. Pitts*, 121 Tex. 196, 48 S.W.2d 941 (1932), and *Seddon v. Harrison*, 367 S.W.2d 888 (Tex. Civ. App.–Houston 1963, writ ref'd n.r.e.), the Kerrs argue the Rifes' property description is insufficient because the Rifes produced no evidence to show the unsold lots included the disputed lots.

In *Mills*, the Supreme Court of Texas held the plaintiff in a trespass to try title suit produced no evidence of superior title from a common source, reasoning the

plaintiff claimed title under a deed that conveyed unsold parcels and there was no evidence of which parcels had been sold and which parcels had not been sold. 48 S.W.2d at 941–42. Similarly, the court in *Seddon* held the plaintiff in a trespass to try title suit produced no evidence of superior title through a common source because the plaintiff claimed title under a deed that conveyed unsold lots and he produced no evidence of which lots had been sold and which lots had not been sold. 367 S.W.2d at 890. The Kerrs assert "the Rifes have neither proved, nor attempted to prove, which lots remained unsold in the Good Luck Colony [in 1937] such that the lots might still have been held in L.A. Kerr's name as trustee or could have been recovered in his name as trustee."

 Unlike the plaintiffs in *Mills* and *Seddon*, the Rifes produced certified copies of recorded instruments showing (1) in 1909, L.A. Kerr held legal title to all of the Good Luck Colony lots, including the disputed lots; (2) L.A. Kerr conveyed lots not including the disputed lots prior to 1916; and (3) a declaration confirming L.A. Kerr had not conveyed all interests in the disputed lots before 1937. To prove which lots L.A. Kerr conveyed prior to 1916, the Rifes produced a 1910 deed by which L.A Kerr conveyed one lot to Ora Watson; a 1910 deed by which L.A. Kerr conveyed specific lots to A.H. Rife;[6] and a 1912 deed and 1915 deed by which L.A. Kerr conveyed specified lots to L. Houser. All of these deeds, except the 1910 deed to A.H. Rife, are listed in both the Rifes' and the Kerrs' abstracts of title. Each deed contained a description of the lot by lot and block number. None of the sold lots included the disputed lots.

 The Rifes also produced the declaration[7] of Paul Grivich. In his declaration, Grivich stated he conducted a title examination and reviewed the Dimmit County real property records. He further stated:

> Having conducted the title examination and review of real property records ... I can state from personal knowledge that on January 20, 1937, the properties which comprise the Mineral Interest ... were standing of record in the name of L.A. Kerr, Trustee in the deed records of Dimmit County, Texas. Except for Lots 2, 3 and 4, Block 1 and Lots 47 and 48 of Block 2 of the Good Luck Colony Subdivision which were earlier conveyed by L.A. Kerr, Trustee.

The Kerrs assert that Grivich's declaration is conclusory and speculative. Conclusory or speculative opinion testimony is not relevant, competent evidence because such conclusory testimony cannot support a judgment. *City of San Antonio v. Pollock,* 284 S.W.3d 809, 816 (Tex. 2009). A conclusion regarding an ultimate fact is conclusory if the conclusion is not based on supporting facts. *See Weech v. Baptist Health Sys.,* 392 S.W.3d 821, 826 (Tex. App.–San Antonio 2012, no pet.). "[T]estimony is speculative if it is based on guesswork or conjecture." *Nat. Gas Pipeline Co. of Am. v. Justiss,* 397 S.W.3d 150, 156 (Tex. 2012).

Grivich's declaration concludes L.A. Kerr, Trustee, owned the disputed lots in 1937. His conclusion is supported by facts stated in the declaration: he had conducted a title examination, had personal knowledge of the deed records, was aware of the lots that were earlier conveyed, and was aware of which lots remained in the name

---

**6.** These lots are not among the disputed lots.

**7.** The Kerrs did not object to Grivich's declaration on the basis that it lacked a jurat. *See Mansions in the Forest, L.P. v. Montgomery*

*Cty.,* 365 S.W.3d 314, 317 (Tex. 2012) (holding the failure to object to the absence of a jurat waives complaint on appeal).

of L.A. Kerr, Trustee. We therefore hold Grivich's declaration is not conclusory or speculative. *See id.*; *Weech*, 392 S.W.3d at 826. Thus, *Mills* and *Seddon* are distinguishable because the Rifes produced evidence showing which lots were sold and which lots were not sold. Taking the Rifes' evidence as true, and indulging every reasonable inference and resolving all doubts in their favor, we conclude the Rifes produced some evidence raising a fact issue as to whether the disputed lots were among the unsold lots in which A.H. Rife acquired an undivided ½ interest. *See Rhône–Poulenc, Inc.*, 997 S.W.2d at 223; *City of San Antonio*, 47 S.W.3d at 561.

### C. Conclusion Regarding the Rifes' Trespass to Try Title Claim

 The Rifes produced some evidence raising a fact issue as to whether they had superior title through a common source. The Rifes produced their abstract of title and the Kerrs' abstract of title showing both sides' legal title is derived from the 1909 plat and the 1909 deed conveying all of the Good Luck Colony lots to L.A. Kerr, Trustee. The Rifes produced other deeds showing which properties were previously conveyed and a declaration proving the disputed lots comprising remained in the name of L.A. Kerr, Trustee, at the time of the 1916 agreement.

The 1932 deed to Alta Kerr does not necessarily break the Rifes' chain of title because the Rifes produced some evidence raising a fact issue as to whether L.A. Kerr lacked the authority to convey the undivided ½ interest A.H. Rife acquired in 1916. The Rifes produced some evidence they had superior title through a common source. Thus, the trial court erred by granting the Kerrs' no-evidence motion for summary judgment on the Rifes' trespass to try title claim, and its judgment must be reversed.

### ADVERSE POSSESSION

 The Rifes argue this court must render judgment declaring they own an undivided ½ interest in the mineral estate because they conclusively established they owned the interest and the Kerrs produced no evidence of adverse possession. The only adverse possession element the Rifes challenged in the trial court and on appeal is the element of ouster of a cotenant.[8] Thus, we may render judgment for the Rifes only if the Kerrs presented no evidence raising a fact issue regarding the ouster element of their affirmative defense. *See Romo*, 48 S.W.3d at 269; *see also Haby v. Howard*, 757 S.W.2d 34, 38 (Tex. App.–San Antonio 1988, writ denied) (holding that a fact issue regarding the affirmative defense of adverse possession precludes summary judgment on a trespass to try title claim).

 "The adverse possession standard that courts apply to cotenants differs from the standard that courts impose between strangers." *Villarreal v. Guerra*, 446 S.W.3d 404, 410 (Tex. App.–San Antonio 2014, pet. denied). "Cotenants must surmount a more stringent requirement because acts of ownership which, if done by a stranger, would per se be a disseizin, are not necessarily such when co-tenants share an undivided interest." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011). In an adverse possession claim between cotenants, the proponent must prove ouster—unequivocal, unmistakable, and hostile acts the possessor took to disseize other cotenants. *Id.* A cotenant's possession of

---

**8.** Although the Kerrs contend L.A. Kerr and A.H. Rife were not cotenants, we have concluded the Rifes produced evidence raising a fact issue as to whether L.A. Kerr and A.H. Rife were cotenants as of 1916.

property is not adverse until the tenancy has been repudiated, and "notice of such repudiation has been brought home to the titleholder." *Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex. 1976).

 This more stringent requirement may be satisfied in one of at least two ways. First, "[i]t has long been settled in Texas that a conveyance by one cotenant to a stranger, or by one or more cotenants to another cotenant, purporting to convey the entire common property, when followed by actual adverse possession, amounts to a disseizin of the non-participating cotenant; and record of such conveyance, followed by possession, constitutes notice of the repudiation." *Republic Prod. Co. v. Lee*, 132 Tex. 254, 265, 121 S.W.2d 973, 978 (1938).[9] Second, long-continued possession of the land under a claim of ownership by one cotenant and non-assertion of a claim by the cotenant may also constitute notice of repudiation of a cotenant's interest. *See Tex–Wis Co.*, 534 S.W.2d at 899. "Such notice may be constructive and will be presumed to have been brought home to the cotenant or owner when the adverse occupancy and claim of title to the property is so long-continued, open, notorious, exclusive and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the co-tenant or owner out of possession, or from which a jury might rightfully presume such notice." *Id.*

As we concluded, the 1916 agreement raises a fact issue as to whether A.H. Rife acquired an undivided ½ interest in the disputed lots in 1916. The Kerrs produced the 1932 deed by which L.A. Kerr purported to convey all of the disputed lots to Alta Kerr. The 1932 deed was recorded. The Rifes claim they inherited an undivided ½ interest in the disputed lots from A.H. Rife, whose interests passed to his successors in title in December 1938.

The Kerrs produced several affidavits and declarations showing the property was thereafter used by the Kerrs and their predecessors in title. Those declarations described how the Kerrs and their predecessors in title used the property starting in the 1930s, and their uses included livestock grazing, hunting, camping, building and maintaining structures, and fencing off the property. Several of the affidavits and declarations also stated the Kerrs paid taxes on the property, the property was in continuous peaceful use by the Kerrs, and the affiants and declarants had no knowledge of others who claimed to own the property. Taken as true, the 1932 deed, as well as the affidavits and declarations, raise a fact issue as to whether L.A. Kerr purported to convey all of L.A. Kerr's and A.H. Rife's interests in the disputed lots, the conveyance was recorded, and the conveyance was followed by continuous, exclusive use by the Kerrs and their predecessors in title. *See Republic Prod. Co.*, 132 Tex. at 265, 121 S.W.2d at 978. The affidavits and declarations also raise a fact issue as to whether the Kerrs' and their predecessors' in title use of the property was long-continued, open, notorious, exclusive and inconsistent with the existence of title

---

9. The Rifes cite numerous cases holding or noting that a cotenant's "filing of documents affecting title by such a cotenant are of no consequence as the law does not require other cotenants to constantly examine records to guard against the filing of instruments that might affect their title." This authority is consistent with long-settled principle that such a conveyance *followed by recordation and possession by the third party* gives rise to such notice. *See Republic Prod. Co.*, 121 S.W.2d at 978. Such a deed puts a cotenant on notice of a cotenant's hostile claim "only if it is on record before they acquire their interests." *Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.–Houston [1st Dist.] 2010, no pet.).

in the Rifes. *See Tex–Wis Co.*, 534 S.W.2d at 899.

The Rifes assert the Kerrs may only claim adverse possession under the three-year statute because the 1937 deed to A.H. Rife was executed less than five years after the 1932 deed to Alta Kerr. Because a fact issue remains about whether the 1916 agreement created a cotenancy between L.A. Kerr and A.H. Rife in the disputed lots, and Alta Kerr took possession of the disputed lots under the 1932 deed, then Alta Kerr's exclusive possession continued against A.H. Rife and his successors in interest. *See Fish v. Bannister*, 759 S.W.2d 714, 717 (Tex. App.–San Antonio 1988, no writ) (holding in the absence of ouster, the "mere execution of written instruments ... by a record owner does not interrupt the exclusive nature of the possession of an adverse claim"). The Rifes contend a repudiation by deed does not satisfy the three-year limitation statute, but they do not dispute such a repudiation by deed satisfies the five-year, ten-year, or twenty-five year statutes of limitations, all of which were argued by the Kerrs in response to the Rifes' motion for summary judgment. *See W. 17th Res., LLC*, 482 S.W.3d at 696 (holding a cotenant's interest may be adversely possessed under the five-year statute when a deed purports to convey the cotenant's entire interest).

█ The Rifes argue "it is undisputed that no one has ever lived on the property, demonstrating that the Kerrs never went into actual possession." However, uses such as fencing an area and using the area for cattle grazing may constitute actual possession for purposes of proving ouster. *See Tex–Wis Co.*, 534 S.W.2d at 899; *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 287, 267 S.W.2d 781, 785 (1954). There is evidence the disputed property was fenced off and used for cattle grazing, camping, hunting, and the erection and maintenance of structures. Although the Kerrs produced no evidence they ever "lived on the property," living on a property in and of itself is not the only way to prove actual possession. *See Tex–Wis Co.*, 534 S.W.2d at 899; *Orsborn*, 267 S.W.2d at 785. We hold the Kerrs produced some evidence raising a fact issue regarding the element of ouster. We therefore may not render judgment in favor of the Rifes. *See Haby*, 757 S.W.2d at 38.

### CONCLUSION

The Rifes produced some evidence raising a fact issue about whether their chain of title is connected to the Kerrs' chain of title through a common source—L.A. Kerr, Trustee, under the 1909 plat deed and the 1909 deed. Although L.A. Kerr purported to convey all of the disputed lots to Alta Kerr in 1932, the Rifes produced some evidence raising a fact issue as to whether L.A. Kerr conveyed only an undivided ½ interest in the disputed lots and, as a result, the other undivided ½ interest remained with A.H. Rife. We therefore reverse the trial court's judgment. Although the Rifes contend they are entitled to judgment as a matter of law, the Kerrs produced some evidence raising a fact issue regarding their affirmative defense of adverse possession. We must therefore remand the case to the trial court for further proceedings. *See* TEX. R. APP. P. 43.3(a).