Viola L. HABY, Appellant,

v.

Louis M. HOWARD and wife, Corrine Howard; Stanley R. Livesay, and wife, Joyce C. Livesay, Edward P. Gistaro, and wife, Marti Gistaro, Hugo C. Stolte, Jr., and Bexar–Medina–Atascosa Counties Water Control and Improvement District Number One, Appellees.

No. 04–87–00413–CV.

Court of Appeals of Texas, San Antonio.

June 29, 1988.

Rehearing Denied Sept. 20, 1988.

Michael Flume, Estrada & Flume, Richard H. Klitch, Jr., Law Office of Richard H. Klitch, San Antonio, for appellant.

Edward G. Marion, James Michael Callan, Scott Campbell, Hollon, Marion & Richards, Boerne, for appellees.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from summary judgment in a trespass to try title action. Haby sued for possession of 1.2383 acres, a narrow strip of land at the waterline of Medina Lake, claiming a chain of title from the sovereign. Appellees claim fee simple ownership of the same parcel of land relying on their own chain of title, adverse possession, strip and gore, and title by circumstantial evidence. A take nothing sum-

mary judgment was entered against Haby and in favor of appellees.

Appellant raises four points of error contending that there are real issues of material fact to be determined: appellees failed to show conclusively as a matter of law each element of adverse possession; the doctrine of title by circumstantial evidence is not relevant and should not be applied; summary judgment evidence of "strip and gore" is insufficient to remove issues of material fact; and the original deed from Titus Haby to J.R. Lambert raises material fact issues as to the meaning of the term "high datum water line"—whether this meant the 1084 foot natural contour line and not the 1072 foot natural contour line as contended by the movants.

█ The purpose of a summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. TEX.R.CIV.P. 166–A. *Ghazali v. Southland Corp.,* 669 S.W.2d 770, 773 (Tex.App.—San Antonio 1984, no writ). The burden in a summary judgment proceeding is on the defendant movant to prove that, as a matter of law, plaintiffs, the non-movants, have no cause of action against the defendant on any theory alleged in the petition or that the defendant has a complete affirmative defense. *City of Houston v. Clear Creek Basin Authority.,* 589 S.W.2d 671, 678 (Tex.1979); *Salinas v. Crown Central Petroleum Co.,* 647 S.W.2d 384, 387 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

█ This Court is required to review the summary judgment in the light most favorable to the non-movant and to resolve any doubt as to the existence of a genuine issue of material fact against the movant. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Salinas v. Crown Central Petroleum Co., supra* at 387. The movant is not entitled to a summary judgment where the motion is insufficient as a matter of law to establish the absence of a fact issue. *Anderson v. Bormann,* 489 S.W.2d 945, 948 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.). Where defendant movants offer an affirmative de-

fense the movants are obligated to prove all elements of their defense as a matter of law. *Odeneal v. Van Horn,* 678 S.W.2d 941, 941 (Tex.1984).

The question in the present case is whether the movants (appellees) have conclusively proved *as a matter of law* each element of any one of the affirmative defenses raised, thereby precluding a trial.

Defendants in this case based their motion for summary judgment on the "the pleadings, abstracts of title, notices of filing of certified copies to be used as evidence and affidavits, certified public records on file herein, answers to interrogatories, responses to requests for admissions, affidavits attached hereto and depositions on file herein and made a part hereof." *See,* TEX.R.CIV.P. 166–A(a), (c).

Parties to this suit all trace their title to a common source, Titus Haby. The evidence shows that over 200 Haby-owned acres in the Medina River area were taken in contested condemnation proceedings from 1911 to 1917. The land was for use as a reservoir to store waters close to the dam to be constructed by the Medina Valley Irrigation Company. Some Haby property became part of the resulting Medina Lake and other Haby property abutted the lake. Haby, the original owner, retained title to the property underlying Medina Lake and sold off part of his property abutting the lake. Appellees (the defendants) claim chain of title from a 1918 conveyance of Titus Haby to J.R. Lambert. Appellant claims the property in dispute was not conveyed to J.R. Lambert in 1918 and that the property was later conveyed from Titus Haby to the appellant and her late husband in 1941.

### Adverse Possession

█ Appellant first challenges appellees' right to recovery of the property based on the doctrine of adverse possession under the 10 year statute of limitations. TEX. CIV.PRAC. & REM.CODE ANN. § 16.026 (Vernon 1986). She argues the elements of adverse possession are issues of material fact to be determined by the trier of fact.

As noted, the burden of proving the essential elements of adverse possession as an affirmative defense is on the appellees (the defendants). *Salinas v. Crown Central Petroleum Co., supra.* *See Fuentes v. Garcia,* 696 S.W.2d 482 (Tex.App.—San Antonio 1985, no writ). To establish title by adverse possession the movants were bound to prove: possession of the land; cultivation, use or enjoyment of the lands; an adverse or hostile claim; exclusive dominion over the property; and appropriation of the property for possessor's own use and benefit for a period of ten years. *Fuentes v. Garcia, supra* at 484. For the court to find limitation title as a matter of law the evidence and facts supporting that conclusion must be undisputed as to each and every element of adverse possession. *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985). In determining title by adverse possession inferences are never indulged in favor of the claimant. *Id. DeArman v. Surls,* 618 S.W.2d 88, 91 (Tex.App.—Tyler 1981, writ ref'd n.r.e.).

■ To prove adverse possession the claimant must show that his possession is so open and notorious, and manifested by such open or visible acts, that knowledge on the part of the owner will be presumed. *See Chapa v. Garcia,* 513 S.W.2d 953, 956 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). Appellant contends that a genuine issue of material fact exists whether possession by appellees and their predecessors in interest was open and notorious.

The last grantees to purchase the one and one-fourth acres above the 1084 foot line were Louis M. Howard and wife in 1982. They also received by deed from Alvin C. Bridges and wife a conveyance of the disputed land, 1.2383 acres. This disputed tract was a narrow strip adjoining the land above the 1084 foot mark, lying between it and the lake. The Howards subsequently split all the land, both undisputed and disputed into lots, which they sold. The lots all abutted the lake. They retained a lot and built upon it. They and their grantees were defendants below, along with the Bridges and others.

Appellees argue that J.R. Lambert, who died in 1926, their predecessor in interest, made a number of improvements to the property including: rock walkways extending down to the 1072 foot contour line, a two-story concrete boathouse at and just below the 1072 foot contour line, a rock wall and wire fence at the 1072 foot contour line, plantings of crepe myrtle along the 1072 foot contour line, and the creation of a park with benches and swings on the west end of the property in dispute.

Appellant raised the issue of sufficiency of proof of adverse possession in her response to the motion for summary judgment. Even had she not done so, the burden of proving each element would still be upon the movants. Whether the improvements allegedly made by J.R. Lambert were sufficient to manifest an open and notorious claim to the land was questioned by the deposition testimony of Stanley R. Jagge who claimed that the alleged improvements were not readily apparent to an observer. Real estate appraiser Rothe J. Carle testified in deposition regarding the improvements on the disputed property between the 1072 and 1084 contour lines:

Answer: The only improvements on the area in question would be perhaps a walkway, concrete or rock or retainer walls, and, of course, floating docks which that [sic] would not be an improvement to the land.

Question: And did you assign any value to those walks or anything?

Answer: No sir, I did not.

Question: Do you have any idea what the value of that would be?

Answer: I don't think it would be of significant value to the property in question. I think if those rock retainer walls or sidewalks were not there, the land would not sell for any less. In other words, I don't think they really add any value to the property.

Carle's testimony was made in connection with his inspection of the property pursuant to a sale from Alvin Bridges to the Howards in 1982.

Hilmar A. Koch, a surveyor employed by Bridges, testified in deposition that he did

not observe any improvements upon the property in question during his survey in 1982. James T. Taylor, who owned property adjacent to the appellees testified in deposition regarding the use of the "park area" at the west end of the disputed tract.

Question: Who would use that park?

Answer: Who used it?

Question: Yes, sir.

Answer: Oh, everybody around here. We used it. Anyone that—that had this Lambert property, or the neighbors here next door used the park.

Taylor testified further that the Habys allowed landowners to cross their property to get to the lake, and even installed gates in existing fences to facilitate access.

Neither Taylor nor Bridges, whose testimony is relied on by appellees, were able to testify from personal knowledge that any improvements were made on the disputed property by J.R. Lambert. Their testimony amounts to speculation, supposition, or reputation based on their secondhand understanding of the history of the property. There is testimony that J.R. Lambert used the disputed property for recreational purposes but this use was not shown to be conclusively exclusive.

Use of the disputed property by subsequent owners of the adjacent land above the 1084 contour line was limited to recreational use or access to the lake. From 1965 until 1982 Bridges owned the property above the 1084 contour line adjacent to the disputed tract. Bridges testified to his use of the disputed tract during these years indicating he had constructed a new boat dock, cleared some trees and repaired steps on the disputed property. As previously noted, floating boat docks for recreational purposes would not constitute an improvement to the land.

In addition to the previously discussed matters, there appears to be a question whether limitations title, if there could be one under these facts, had matured on the disputed acreage many years before the Bridges acquired the title to the undisputed. Lambert purchased the undisputed land in 1918. If the Lambert's use of the disputed land met the requirements of the 10 year statute of limitations, then title may have matured before the heirs conveyed the undisputed land in 1929. Yet no conveyance which included the land now in dispute was made; in fact, that deed and the many others up to and including the deed to Bridges in 1965, expressly conveyed only one and one-fourth acres and referred to the 1918 survey of Louis Polk as setting the boundaries, as did the original deed from Haby to Lambert.

When title by limitation has matured, there is no further place for "tacking." *Dale v. Stringer,* 570 S.W.2d 414, 418 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.). And the title so *matured* cannot be transferred orally, but can be conveyed only by an instrument in writing. *Id.* Bridges' deposition testimony was that his immediate predecessor indicated orally to him that he was purchasing the disputed land as well as the one and one-fourth acres described in the deed. Although the oral transfer of possession of the disputed tract would have been sufficient to tack *unmatured* adverse possession, it could not be effective to transfer a matured title. The summary judgment evidence raises this as a material fact issue of the adverse possession claim.

Whether the Bridges satisfied the limitations statute in order to convey full title to the Howards in 1982 is a question raised by the summary judgment proof. The deed from the Bridges to the Howards is the first one to describe 2.4883 acres which does include the disputed land and refers to the 1072 foot water mark. This deed is based on the attached field notes of a 1982 survey.

Stanley Jagge testified that appellant used the land in dispute to graze cattle. Jagge stated that when the lake was dry, and grass was growing on the flats the Habys had grazed a hundred head of cattle on the lake bed and the disputed tract adjacent to it. He knew this had occurred on at least two previous occasions.

We find that there is contradictory evidence regarding proof of the elements of adverse possession. Therefore, the trial

court was precluded from finding adverse possession by appellees as a matter of law. Appellant's first point of error is sustained.

### Title by Circumstantial Evidence

Appellant next complains that the appellees were not entitled to recovery of the disputed property under the doctrine of title by circumstantial evidence as a matter of law. She argues that the doctrine is not relevant in this case and should not be applied when genuine issues of material fact exist.

■■ The doctrine of title by circumstantial evidence is basically a common law adverse possession cause of action. This is also referred to as the "lost grant" theory. Where a party has asserted a claim to property in dispute for a long period of time, has established a general reputation of owning the land, *is able to establish a complete non-claim by the holder of apparent record title,* and lack of a claim by any other person over the same period, a court may presume the existence of a "lost grant" that conveyed the property in dispute to the adverse claimant. *Purnell v. Gulihur,* 339 S.W.2d 86 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). The court in *Purnell* found the claimants had established title by circumstantial evidence through their long term assertion of the claim for the property. The court also found claimants had established a general reputation of being the owners of the property in dispute, as shown by the tax rolls, the plat books, and the redemption receipts from the State of Texas. This was combined with a showing of a complete non-claim by the holder of the apparent record title and an absolute lack of any showing that the property had been claimed or used by any other. *Id.* at 92.

■■ In this case there is no question of a lost title or a grant. Neither do appellees claim or offer proof of payment of taxes. Appellees offer evidence of possession and the reputation of their ownership.

On the other hand there is evidence that the property was claimed by appellant and that appellant made use of the property in dispute to graze cattle from time to time.

Testimony offered by appellees' witnesses showed that the property was in part used as a picnic area by neighbors in the vicinity. Finally testimony was offered by Viola Haby that she had paid taxes on the property continuously up to the present.

Clearly the issue is disputed; the evidence does not establish as a matter of law the complete non-claim of the apparent record holder. Therefore, the court may not find as a matter of law that appellees have demonstrated a right to title by circumstantial evidence. The second point of error is sustained.

### Doctrine of Strip and Gore

In his third point of error appellant complains the trial court erred by ruling, as a matter of law, that appellees were entitled to recovery under the doctrine of strip and gore.

■■ When it is apparent that a relatively narrow strip of land which is small in size and value in comparison to the adjoining tract conveyed by the grantor, has ceased to be of benefit or importance to the grantor, it may be presumed that the grantor intended to convey the narrow strip along with the larger tract under the doctrine of "strip and gore". *Angelo v. Biscamp,* 441 S.W.2d 524, 526–27 (Tex. 1969). In one case, a warranty deed to a parcel of land did not include a strip of land next to a river bank, but there was evidence that the deed was intended to include such a strip since there was no fence separating the strip from the rest of the parcel of land, and the strip by itself had little value, if any. Under these circumstances the strip was held to pass to the grantee under the "strip and gore" doctrine. *Strayhorn v. Jones,* 157 Tex. 136, 300 S.W. 2d 623, 638 (1957).

■■ The strip and gore doctrine applies only when that specific strip is not included in the field notes or the property description of the conveyance. *Id.* The deed from Titus Haby to J.R. Lambert does not include the disputed strip. We note that the disputed strip is not small in size when compared to the adjoining tract con-

veyed by the grantor. In fact the disputed property is approximately the same size as that granted in the deed, both being approximately one and one-fourth acres. We next look at the value of the disputed property lying between the 1072 foot and the 1084 foot contour lines along the lake shore.

Appellees argue that the disputed property is isolated and worthless, a 50 foot wide strip of land containing nothing but rocks, brush, and cedar trees. Attached to their motion for summary judgment is the affidavit of A.C. Schwelthelm, a real estate appraiser, who offers his opinion that the land in dispute, standing alone, has potential only for use for picnicking and recreation. Schwelthelm considers the value of the property limited when used for grazing because of its size and shape. He states that the property has a nominal value but adds that it is doubtful that the property would be marketable as a severed tract.

Appellant argues that the strip of property in dispute, located between the 1072 and 1084 "natural contour lines", adjoins over 100 acres of land owned by Viola Haby but located below the 1072 natural contour line. When the water level drops below the 1072 natural contour line the disputed property adjoins a substantially larger area of the exposed lake bed and is used to graze cattle. In addition the deposition testimony of Carle, also an appraisal expert, reflects his opinion that the disputed property has some value when considered with the larger parcel of which it was a part. This would apply whether the disputed strip were considered in conjunction with the one and one-fourth acres deeded to appellees or if the disputed strip were considered in conjunction with the adjoining lake bed owned by Viola Haby.

There is conflicting evidence as to the actual value of the disputed strip of property, which is not small in size in comparison to the adjoining tract conveyed by the grantor. Finally, the record reflects some evidence of the benefit of this property to Haby, the original grantor. Under the circumstances these issues are for the finder of fact. A ruling as a matter of law that

appellees were entitled to recovery of the disputed property under the doctrine of strip and gore was not proper. The third point of error is sustained.

### The Deed from Haby to Lambert

Lastly, appellant complains the trial court erred in ruling, as a matter of law, that the deed of real property from Titus Haby to J.R. Lambert was unambiguous in favor of the grantee. Appellant argues that genuine issues of material fact are present in the record and indicate ambiguities in the deed and such ambiguities are issues of material fact to be determined by the trier of fact. The 1918 deed contained the following language:

> That we, Titus A. Haby and wife, Lizzie Haby ... convey unto J.R. Lambert ... all that certain tract and parcel of land ... containing one and one-fourth (1¼) acres of land, and known as Cedar Point Bluff on the east side of an [sic] fronting and adjoining Medina Lake, more fully described as follows: beginning at a stake, a point where the south line of such survey no. 1, intersects the high datum water line of the Medina Lake; fence east 133 vrs. along said south line of said survey no. 1, to where said line again intersects the high datum water line on the west side of a deep gulch; fence following said high datum water line in a north westerly, western and southeastern direction to the place of beginning and containing one and one quarter acres of land, more or less ...

Appellees argue that calls for acreage in a deed are the least reliable of all calls. *Texas Pacific Coal & Oil Company v. Masterson,* 160 Tex. 548, 334 S.W.2d 436, 439 (1960). Calls in a deed for adjoinder to natural objects as a boundary or terminus are given priority over calls for distance. *Bickler v. Bickler,* 403 S.W.2d 354, 361 (Tex.1966). They argue that because the deed states the property conveyed fronts and adjoins Medina Lake, the call for adjoinder to Medina Lake must control, even if it means conveying more acreage than the amount of acreage specified in the deed.

Appellant argues that the meaning of the phrase "fronting and adjoining Medina Lake" is a material fact issue. [We note here the time was 1918, a new dam had just been built, and Medina Lake created.] The deposition testimony of Harlan R. Wolff, surveyor, suggests that the property conveyed to J.R. Lambert by Titus Haby does, in fact, front and adjoin Medina Lake, but does so at the 1084 foot natural contour line, the "high datum water line".

Appellant further argues the meaning of the term "high datum water line" is a highly contested material fact issue. Appellees offer the affidavit of Thomas C. Haberer, registered public surveyor, who expresses his opinion that the phrase "high datum water line" can be reasonably interpreted to mean the highest normal pool level of Medina Lake or the 1072 foot contour line. Appellant points to the deposition testimony of Hilmar A. Koch, appellee's surveyor, who stated that the original "high datum water line" was in fact the 1084 foot natural contour line. In addition, Gloria Diane Wolff–Clark, real estate agent during the Bridges to Howard conveyance, stated in her deposition that she had determined, upon investigation, that the 1084 natural contour line was in fact the "high datum water line". Appellant's argument is supported by the expert opinions of Carle, the Medina Lake area real estate broker and appraiser, and Anne Davis, a Hondo attorney and real estate expert.

Appellees contend that the deposition testimony of Koch, Wolff–Clark, and Davis was not presented to the trial court in appellant's response to the motion for summary judgment, and, therefore should not be considered in this appeal. We note, however, that appellees based their motion for summary judgment, among other things, on "the depositions on file herein". Issues are expressly presented by *all the evidence* presented to and considered by the court, including deposition testimony. *Albritton v. Henry S. Miller*, 608 S.W.2d 693, 695 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

Appellees argue that the argument as to the meaning of the phrase "fronting and adjoining Medina Lake" should not be considered on appeal because appellant did not specifically raise the issue in response to the motion for summary judgment. However, that issue was raised by appellees in their motion for summary judgment and in their argument for interpretation of the deed. Therefore we find that the issue is properly before the court on appeal.

The intent of the grantor in his use of the terms "high datum water line" and "fronting and adjoining Medina Lake" as well as the extent of the estate conveyed to the grantee—these matters relate to the boundaries of the property to be conveyed. The intention of the parties to a deed with respect to the boundaries is ordinarily a fact question. *Bickler v. Bickler, supra* at 361. *See King v. Dallas*, 374 S.W.2d 707, 712 (Tex.Civ.App.—Dallas 1964, writ ref'd n.r.e.). Under the evidence presented, the trial court could not properly find, as a matter of law, that the deed of real property from Titus Haby to J.R. Lambert was unambiguous and conveyed the disputed property to that grantee. The fourth point of error is sustained.

The summary judgment of the trial court is reversed and the case remanded for trial on the merits.