

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00450-CV

Velma **SAN MIGUEL** and Alexis Rendon,
Appellants

v.

**PLAINSCAPITAL BANK, TRUSTEE OF THE GUERRA MINERAL TRUST**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. DC-16-19
Honorable Everardo Garcia, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice
Dissenting Opinion by: Patricia O. Alvarez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: July 10, 2019

REVERSED AND REMANDED

Appellants Velma San Miguel and Alexis Rendon appeal the trial court's order granting

summary judgment in favor of Appellee PlainsCapital Bank, Trustee of the Guerra Mineral Trust,

(the "Bank") in a trespass-to-try-title action.  The appellants claim the Bank failed to conclusively

prove it was entitled to judgment as a matter of law.  The Bank moved for summary judgment

asserting title to the disputed property on three alternate theories: (1) the doctrine of prior

possession; (2) statutory adverse possession; and (3) common law adverse possession.  The Bank

also moved for summary judgment on the ground that title to the disputed property had been

previously adjudicated and the suit was barred by the doctrine of res judicata. The trial court granted summary judgment in favor of the Bank but did not specify on which grounds the Bank proved title.

## BACKGROUND

The ownership of the mineral interest at issue in this case involves legal descriptions to three tracts of land consisting of two tracts nested within a single large tract in Starr County, Texas. The largest tract, Porcion 58, consists of approximately 5,733.70 acres. Nested completely within Porcion 58 is an 859.77-acre tract. Nested completely within the 859.77-acre tract is the 781.11-acre tract of land. The mineral interests in the 781.11-acre tract of land are in dispute in this case.

As trustee of the Guerra Mineral Trust, the Bank claims it holds record title to 46.6% of the mineral interest in the 781.11-acre tract based on an unbroken record title back to 1956.[1] The beneficiaries of the Guerra Mineral Trust (the "Guerras") assert they owned the unsevered surface and mineral interest until the 781.11-acre tract was sold to Clinton Manges in 1969.[2] In the 1969 sale, the surface and mineral estates were severed when Manges was deeded all of the surface estate and 53.4% of the mineral estate while the Guerras retained 46.6% of the mineral estate.[3]

An oil company sought to develop the mineral interests in the 781.11-acre tract of land, but as a condition of the lease, the oil company required the title to the mineral interests be cleared of any claims prior to 1956. Prior to 1956, the mineral interests were not severed from the surface estate. Therefore, in order for the Bank to establish ownership of the mineral interests, the Bank had to establish the Guerras owned title to the surface estate.

---

[1] A 1956 deed from H.P. Guerra to the M. Guerra & Son Partnership is the first paper title of record since the King of Spain granted Porcion 58 to Joaquin Chapa.

[2] Even though the purported property was transferred from H.P. Guerra to the M. Guerra & Son Partnership, the property allegedly remained in the control of the Guerra family.

[3] The sale to Manges included 72,000 acres of land in Jim Hogg and Starr County. *Manges v. Guerra*, 673 S.W.3d 180, 181 (Tex. 1984). The Bank claims the 781.11-acre tract of land was included in the total acres sold to Manges in 1969.

In January 2016, the Bank filed a trespass-to-try-title action to settle title to any claims of ownership before 1956. The original sovereign was the King of Spain; in 1764 the King of Spain granted all of Porcion 58 to Joaquin Chapa. The Bank served the heirs of Joaquin Chapa with citation by publication. Hundreds of defendants responded to the lawsuit, but few produced any evidence of ownership. Subsequently, the Bank moved for summary judgment as a matter of law claiming it conclusively proved the Guerras had ownership of the 781.11-acre tract of land prior to 1956 because: (1) title was previously adjudicated in favor of the Guerras in *Manges v. Guerra*, 673 S.W.2d 180 (Tex. 1984); (2) the Guerras acquired title by statutory adverse possession; (3) the Guerras acquired title by common law adverse possession; and (4) the Guerras acquired title by prior possession. The Bank attached the affidavits of William Thomas Guerra, Sr. (the "Guerra Affidavit") and Bill Douglas Pope, Sr. (the "Pope Affidavit") to establish the Guerras' possession of the 781.11-acre property prior to 1956.[4]

San Miguel and Rendon filed a response to the Bank's motion for summary judgment arguing the Bank did not meet its burden to show it was entitled to judgment as a matter of law. Additionally, San Miguel argued issues of material fact existed regarding the Guerras' possession of the disputed property prior to 1956.[5] San Miguel supported this contention with her own affidavit, an abstract of title, and the affidavit of the expert who prepared her abstract of title. As previously noted, the trial court granted summary judgment in favor of the Bank, and San Miguel and Rendon appeal.

---

[4] The Bank conceded in oral argument that it relied solely on the Guerra and Pope Affidavits to establish actual possession of the disputed property prior to 1956.

[5] Isabel Reyna, Juan Manuel Pina, Cristina Pina Garza, Amanda Pina, Homero Pina, Estefana Pina Gonzalez, Leonor Pina Flores, Jaime Pina, and Tomas Pina also filed a response to the Bank's motion for summary judgment but did not appeal the trial court's decision.

## STANDARD OF REVIEW

"A trial court's decision to grant summary judgment is subject to de novo review." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833 (Tex. 2018). In a traditional motion for summary judgment, the movant "bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003) (citing TEX. R. CIV. P. 166a(c)). If the movant meets its burden, the burden shifts to the nonmovant to raise a genuine issue of material fact that is sufficient to defeat the summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). In our review, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Knott*, 128 S.W.3d at 215.

When, as in this case, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

## TRESPASS TO TRY TITLE

"[T]he Texas Property Code states that a 'trespass to try title action is *the* method of determining title to lands, tenements, or other real property.'" *Lance v. Robinson*, 543 S.W.3d 723, 735 (Tex. 2018) (emphasis in original) (quoting TEX. PROP. CODE ANN. § 22.001(a)). "To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Lance*, 543 S.W.3d at 735. Trespass-to-try-title actions "involve detailed pleading

and proof requirements." *Id.* Thus, the plaintiff must recover upon the strength of his own title and not upon the weakness of his adversary's title. *Id.* at 736; *see also Garza v. Garza*, 297 S.W.2d 874, 875 (Tex. App.—San Antonio 1956, writ dism'd). In the trial court and on appeal, the parties did not address the first two methods to try title—proof of a regular chain of conveyances from the sovereign and superior title out of a common source—so we do not address them here. *See Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response."); Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

## SEVERANCE

We briefly address San Miguel's third issue contending the Guerras could not have actually possessed the mineral estate without production of the minerals. San Miguel's argument fails to recognize that the Bank is claiming possession of the mineral estate by virtue of the Guerras' possession of the surface estate prior to severance of the two estates in 1969. *See Gulley v. Davis*, 321 S.W.3d 213, 220 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("When adverse possession commences before a severance of the mineral estate, the adverse possession includes both the surface and mineral estate." (citing *Rio Bravo Oil Co. v. Staley Oil Co.*, 158 S.W.2d 293, 295 (Tex. 1942))). Because the surface and mineral estate were not severed when the Bank claims the Guerras had possession of the surface estate, actual possession of the surface estate would also constitute possession of the mineral estate. *See McDaniel v. Williams*, 429 S.W.2d 640, 642 (Tex. App.—Tyler 1968, writ dism'd) ("It is a well established rule of law in this state that an adverse entry upon the surface of land extends downward and includes title to underlying minerals where at time of entry there has been no severance of mineral estate."). For this reason, the Bank moved

for summary judgment on the basis that the Guerras owned the surface estate of the disputed property prior to 1956.

### PRIOR POSSESSION

*A. Applicable Law*

The rule of prior possession "has generally been applied in a case where[] it is shown that the plaintiff, having been in possession of land, has been ousted by the defendant. However, the possession relied upon must be of such nature and quality as will reasonably support an inference of ownership." *Garza*, 297 S.W.2d at 875. Consequently, the question of actual possession, giving rise to a claim for prior possession, will usually go to a jury. *Id.* at 876. While proof of prior possession of land is prima facie evidence of title, "[s]uch possession must . . . be actual, and must be so clearly defined as to give the claimant the exclusive dominion over the property." *Id.* (quoting *Lynn v. Burnett*, 79 S.W. 64, 66 (Tex. App.—Fort Worth 1904, no writ)). "[B]efore the judge is authorized to take the case from the jury [upon the issue of prior possession,] the evidence must be conclusive, leaving no room for doubt as to the fact of actual possession." *See Mortgage Land & Inv. Co. v. Spears*, 162 S.W.2d 1015, 1016 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.) (holding the trial court should have submitted the question of actual possession to the jury because the testimony of one witness was not sufficient to prove actual possession as a matter of law); *see also Garza*, 297 S.W.2d at 876; *Cf. Hash v. James*, 337 S.W.2d 506, 508 (Tex. App.—San Antonio 1960, writ ref'd n.r.e.) ("Where the possession is established by undisputed evidence, no issue of fact is presented for the jury.").

"In order to show [itself] entitled to judgment on the theory of prior possession[,] the [Bank] was under the burden of showing that [its predecessor's, the Guerras,] possession of the [781.11-acre tract] was of such a nature that reasonable minds could draw but one inference and that no jury finding thereon would be required." *Decuir v. Houseman*, 310 S.W.2d 591, 593 (Tex.

App.—Beaumont 1958, writ ref'd n.r.e.) (holding the conflicting evidence regarding prior possession could cause reasonable minds to draw different conclusions). The determination of actual possession belongs to the jury unless the Bank undisputedly or conclusively proved the Guerras had actual possession. *See Hash*, 337 S.W.2d at 508. The possession must be so clearly defined as to give the claimant the exclusive dominion over the 781.11-acre tract. *Rilling v. Munoz*, 344 S.W.2d 696, 697–98 (Tex. App.—San Antonio 1961, writ ref'd n.r.e.) (noting where the evidence is not fully developed, "the ends of justice" would be better served by remanding the case to the trial court).

### B. Summary Judgment Evidence

In this case, the Guerra Affidavit attempts to aver to the Guerras' possession of the property since 1932. However, the affiant, William Thomas Guerra, Sr., was not born until 1942. The Guerra Affidavit makes conclusory references to William's "memories" of his family grazing cattle, mending fences, and building a cabin for ranch hands in 1948 on a property he refers to as Los Barrosos Pasture that contained approximately 2,645 acres within Porcion 58. The affidavit also contains phrases such as: "To the best of my knowledge," when referring to the Guerra family's cultivation and use of the property. However, William does not attest to whether the use and cultivation of the property occurred specifically on the 781.11-acre tract disputed in this case. Finally, the affidavit asserts the Guerra family presumably paid taxes on the property to the best of William's knowledge because the taxing authorities never interrupted their control of the property.

The Pope Affidavit states Bill Pope remembered meeting ranch hands that worked for the Guerra family who would lead the cattle to pens and water tanks that were on what was reputed to be the Guerra property. However, it is not clear which portions of the Guerra property Pope is referring to.

San Miguel's affidavit controverts the Guerra and Pope affidavits, claiming San Miguel's family "has been in possession of some, part, or all of the Property at issue in this lawsuit since 1776." San Miguel further avers her family has paid taxes on the property since 1951 and disputes the Bank's abstract of title by providing her own abstract of title and the affidavit of her expert who prepared the abstract of title.

*C. Analysis*

Because the Guerra and Pope Affidavits are not specific to the 781.11-acre tract, the affidavits fail to establish the Guerras conclusively or undisputedly had actual possession of the 781.11-acre tract of land prior to 1956. *See Decuir*, 310 S.W.2d at 593. Therefore, we hold the affidavits were insufficient to conclusively establish the Guerras' possession was so clearly defined as to give them the exclusive dominion over the property. *See Rilling*, 344 S.W.2d at 697.

Our holding in this case is supported by an earlier opinion from this court that addressed this issue. In *Mortgage Land & Inv. Co. v. Spears*, 162 S.W.2d 1015 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.), this court held one witness's loose testimony regarding actual possession was not conclusive enough to take the question from the jury and rule, as a matter of law, in favor of the claimant's prior possession claim. *Id.* "It [was] not enough that the evidence [was] without conflict in establishing the facts relied on to show actual possession, but these facts must themselves conclusively prove such possession." *Id.* at 1016–17; *see also Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129, 138 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding "[t]he record contains no summary-judgment evidence showing that Forman actually possessed [the property] at any time, *and there is certainly no evidence proving this proposition as a matter of law*" when Forman relied solely on a third-party's affidavit to establish his ownership of the disputed property by prior possession (emphasis added) (citing *Land v. Turner*, 377 S.W.2d 181, 186 (Tex. 1964))).

Here, the Bank is asserting actual possession based on affidavits that are disputed and controverted by the opposing parties.[6] Just as the *Spears* court held the undisputed and uncontroverted evidence in that case was insufficient to conclude the claimants held actual possession of the property as a matter of law, the controverted and disputed affidavits in this case are also insufficient to support a finding of prior possession as a matter of law.

We conclude the Bank did not meet its burden of showing the Guerras actually possessed the disputed property *as a matter of law*. Therefore, summary judgment cannot be affirmed based on the doctrine of prior possession.

## TITLE BY LIMITATIONS

The Civil Practice and Remedies Code defines adverse possession as the "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1). "A person . . . must bring suit not later than 25 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *Id.* § 16.027. "Generally, to establish adverse possession, a claimant must prove: (1) actual possession of the disputed property; (2) under a claim of right; (3) that was adverse or hostile to the claim of another person[,] and that it was consistently and continuously so for the duration of the statutory period." *Villarreal v. Guerra*, 446 S.W.3d 404, 410 (Tex. App.—San Antonio 2014, pet denied). "[T]he question of adverse possession normally is a question of fact, so only in rare instances is a court justified in holding that adverse possession has been established as a matter of law." *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990).

---

[6] We recognize Rendon did not submit any evidence in response to the Bank's motion for summary judgment. However, we agree with her assertion that the Bank did not satisfy its burden to prove actual possession as a matter of law.

"The possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011) (emphasis in original). "In determining title by adverse possession[,] inferences are never indulged in favor of the claimant." *Haby v. Howard*, 757 S.W.2d 34, 37 (Tex. App.—San Antonio 1988, writ denied).

We have already determined the Guerra and Pope affidavits are insufficient to show the Guerras had actual possession of the disputed property as a matter of law. *See Rhodes*, 802 S.W.2d at 645–46 (holding actual and visible possession of the disputed property must be conclusively and unmistakably established before a court may grant summary judgment on a claim for title by limitations). "[T]estimony[] consisting almost entirely of conclusions of law and generalities of fact[] falls far short of that clear and satisfactory proof essential to a showing of such peaceful, adverse, exclusive and continuous possession and use of land as will support a limitation title under the statutes." *Urschel v. Garcia*, 164 S.W.2d 804, 806 (Tex. App.—San Antonio 1942, writ ref'd w.o.m.). Thus, the Bank is not able to establish title by limitations because they have not conclusively proved the first element of adverse possession—actual possession of the disputed property. *See Villarreal*, 446 S.W.3d at 410. Therefore, summary judgment cannot be affirmed based on title by limitations.

### COMMON LAW ADVERSE POSSESSION/TITLE BY CIRCUMSTANTIAL EVIDENCE

The doctrine of title by circumstantial evidence is fundamentally a common law adverse possession cause of action. It has also been referred to as the "lost grant" theory. "[The doctrine's] purpose is 'to settle titles where the land was understood to belong to one who does not have a complete record title, but has claimed a long time.'" *Conley v. Comstock Oil & Gas, LP*, 356 S.W.3d 755, 765 (Tex. App.—Beaumont 2011, no pet.) (quoting *Purnell v. Gulihur*, 339 S.W.2d 86, 92 (Tex. App.—El Paso 1960, writ ref'd n.r.e.)). "Where a party has asserted a

claim to property in dispute for a long period of time, has established a general reputation of owning the land, is able to establish a complete non-claim by the holder of apparent record title, and lack of a claim by any other person over the same period, a court may presume the existence of a 'lost grant' that conveyed the property in dispute to the adverse claimant." *Haby*, 757 S.W.2d at 39 (citing *Purnell*, 339 S.W.2d at 92).

In this case, the Bank has failed to conclusively establish a "complete non-claim" by the holder of apparent record title. In her controverting affidavit, San Miguel—a holder of apparent record title as a descendant of Joaquin Chapa—claims the appellants erected fences and made use of the disputed property prior to 1956. Because "the evidence does not establish as a matter of law the complete non-claim of [an] apparent record holder[,]" summary judgment cannot be affirmed based on title by circumstantial evidence. *See Haby*, 757 S.W.2d at 39 ("[T]he court may not find as a matter of law that appellees have demonstrated a right to title by circumstantial evidence" when the evidence does not establish the complete non-claim of the apparent record holder as a matter of law).

## PREVIOUSLY ADJUDICATED TITLE

In its motion for summary judgment, the Bank briefly argues the appellants were barred from disputing title to the property under the doctrine of res judicata because title had already been adjudicated in favor of the Guerras in *Manges v. Guerra*, 673 S.W.2d 180 (Tex. 1984). Other than citing *Manges*, the Bank does not cite any other authority to support its res judicata argument in its motion for summary judgment or on appeal.

In *Manges*, "Clinton Manges and several members of the Guerra family were mineral co-tenants, with Manges holding the executive right to all the minerals." *Manges*, 673 S.W.2d at 181. "The Guerras sued Manges for failure to exercise diligence in leasing the minerals to third persons and for leasing a portion of the minerals to himself at allegedly unfair terms." *Id.* "The jury found

that Manges had willfully disregarded the rights of the Guerras in several specific ways, including his failure to negotiate for mineral leases with third persons, that Manges'[s] actions were in willful and unconscionable disregard of the interests of the Guerras, that the conduct was malicious or wanton, and that the Guerras should receive . . . punitive damages . . . ." *Id.* at 184.

"For res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Here, although the *Manges* court may have discussed the mineral interests the Guerras owned, the Bank has not presented evidence to show the disputed property in *Manges* is the same property in dispute in this case. In addition, the claims raised in *Manges* revolved around whether Manges breached his duty as holder of the executive rights when he leased the mineral interests to himself; it was not a title dispute. *Manges*, 673 S.W.2d at 181. Finally, the Bank has not presented any evidence that San Miguel or Rendon are in privity with the parties in *Manges*. Consequently, the appellants are not barred from bringing this suit under the doctrine of res judicata because the parties and the claims are different from those in *Manges*. *See Daccach*, 217 S.W.3d at 449. Therefore, summary judgment cannot be affirmed based on res judicata.

## CONCLUSION

Viewing the evidence in the light most favorable to the nonmovant, we hold the Bank has not satisfied its burden to establish its right to judgment as a matter of law, and the trial court erred in granting summary judgment. *See Decuir*, 310 S.W.2d at 593; *see also Rilling*, 344 S.W.2d at 698 (holding justice would be better served by remanding the case to the trial court when it was uncertain whether the plaintiff had conclusively established its right to title of the disputed property).

In the event this court reversed the trial court's judgment, the Bank requested we remand the cause only as to those parties who perfected appeal. An appellate court that reverses a judgment against one defendant is not required to reverse the judgment for a nonappealing co-defendant "unless the rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000) (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex. 1989)) ("If the parties' rights are so interwoven, we reverse the unappealed judgment to remedy the effects of the erroneous judgment that prejudiced the appealing party's rights."); *see also Bates v. First Nat'l Bank of Waco*, 502 S.W.2d 181, 185 (Tex. App.—Waco 1973, no writ) (applying the rule recited in *Torrington* and *Plas-Tex* to a summary judgment appeal). Here, San Miguel and Rendon's rights are not dependent on any of the other nonappealing co-defendant's rights because each defendant's claim of superior title is independent to any other person's claim. Because the appellants' rights in this case are not so interwoven with the nonappealing co-defendants that one defendant's cause of action is dependent on another defendant's cause of action, the judgment of the trial court is reversed as to San Miguel and Rendon only, and the cause is remanded for further proceedings consistent with this opinion.

Rebeca C. Martinez, Justice